**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL BEHRENDSEN, Individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>     v. <br><br> YANGTZE RIVER PORT AND LOGISTICS LIMITED, XIANGYAO LIU, XIN ZHENG, and TSZ-KIT CHAN, <br><br>     Defendants. | Case No: <br><br> CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> JURY TRIAL DEMANDED |

Plaintiff Michael Behrendsen ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Yangtze River Port and Logistics Limited ("Yangtze" or the "Company"), and information readily obtainable on the

1

Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Yangtze securities between February 2, 2016 and December 5, 2018, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Yangtze securities during the Class Period and was economically damaged thereby.

7.    Defendant Yangtze is a Nevada corporation with headquarters in New York City. Yangtze operates through its wholly-owned subsidiary, Wuhan Yangtze River Newport Logistics Co., Ltd. ("Wuhan Newport") incorporated in the People's Republic of China ("PRC") which is a logistics and port management company that engages in the business of real estate and infrastructural development and operating a port logistics center in the PRC. Yangtze reached the U.S. markets through a reversed merger. Yangtze's securities trade on NASDAQ under the ticker symbol "YRIV."

8.    Defendant Xiangyao Liu ("Liu") served as the Company's Chief Executive Officer ("CEO") and Chairman of the Board ("Chairman") during the Class Period.

9.    Defendant Xin Zheng ("Zheng") served as the Company's Chief Financial Officer ("CFO") from the beginning of the Class Period until May 2017.

10.    Defendant Tsz-Kit Chan ("Chan") served as the Company's CFO since May 2017.

11.    Defendants Liu, Zheng, and Chan are collectively referred to herein as the "Individual Defendants."

12.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

13.     Yangtze is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Yangtze under *respondeat superior* and agency principles.

15.     Defendants Yangtze and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

16.     On February 2, 2016, Yangtze filed its annual report on Form 10-K with the SEC which provided its financial results and position for the fiscal year ended December 31, 2015 ("2015 10-K"). The 2015 10-K was signed by Defendants Liu and Zheng. The 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by

4

Defendants Liu and Zheng attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

17.    The 2015 10-K discussed the Wuhan Yangtze River Newport Logistics Center, stating in relevant part:

> One of the main projects of our Company is the Wuhan Yangtze River Newport Logistics Center (the "Logistics Center"), which is an extensive complex that is located in Wuhan, the capital of Hubei Province of China, a major transportation hub with dozens of railways, roads and expressways passing through the city and connecting to major cities in Mainland China, with connections to international centers of commerce and business.
>
> *          *          *
>
> ***Wuhan Newport has signed an agreement to rent 1.2 million square meters of land*** on a long term basis for building logistics warehouses covering 400,000 square meters in support of the new port. The warehouses is expected to comprise of port terminal zones, warehouse logistics zones, cold chain supply zones and railroad loading and unloading zones. The warehouses, once constructed, will connect the port terminal along the Yangtze River and the railway leading to Europe, satisfying the requirement of China's latest "One Belt, One Road" initiative. It will also be able to support large logistics companies in Wuhan and other nearby provinces that lease the warehouses, terminals and offices.
>
> (Emphasis added).

18.    The 2015 10-K discussed legal proceedings that the Company faced, stating in relevant part:

> **Item 3.**          **Legal Proceedings.**
>
> We are currently not involved in any litigation that we believe could have a material adverse effect on our financial condition or results of operations. There is no action, suit, proceeding, inquiry or investigation before or by any court, public board, government agency, self-regulatory organization or body pending or, to the knowledge of the executive officers of our company or any of our subsidiaries, threatened against or affecting our company, our common stock, any of our subsidiaries or of our companies or our subsidiaries' officers or directors in their capacities as such, in which an adverse decision could have a material adverse effect.

5

19.     On March 10, 2017, Yangtze filed its annual report on Form 10-K with the SEC which provided its financial results and position for the fiscal year ended December 31, 2016 ("2016 10-K"). The 2016 10-K was signed by Defendants Liu and Zheng. The 2016 10-K contained signed SOX by Defendants Liu and Zheng attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20.     The 2016 10-K discussed the Wuhan Yangtze River Newport Logistics Center, stating in relevant part:

> The Wuhan Yangtze River Newport Logistics Center (the "Logistics Center"), is an extensive complex located in Wuhan, the capital of the Hubei Province of China, a major transportation hub city with access to numerous railways, roads and expressways passing through the city and connecting to major cities in China, as well as other international centers of commerce and business.
>
> **The Logistics Center is expected to occupy approximately 1,918,000 square meters,** for which the construction and development are expected to be completed in three phases in three years and reach its target maximum annual profit by the end of 2021 assuming the entire funding required for construction of the Logistics Center of $1.03 billion is in place by 2020 and the Logistics Center is in operation per our business plan. The following table illustrates the timeframe of our investment and construction progress
>
> *     *     *
>
> **Wuhan Newport has signed a twenty-year lease agreement**, the maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015, **to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.** The warehouses are expected to be comprised of port terminal zones, warehouse logistics zones, cold chain supply zones and railroad loading and unloading zones. The warehouses, once constructed, will connect the port terminal along the Yangtze River and the railway leading to Europe, satisfying the requirement of China's latest "One Belt, One Road" initiative. It will also be able to support large logistics companies in Wuhan and other nearby provinces which will rent the warehouses, terminals and offices within the Logistics Center.

(Emphasis added).

21.     The 2016 10-K discussed legal proceedings that the Company faced, stating in relevant part:

**Item 3. Legal Proceedings**

We are currently not involved in any litigation that we believe could have a materially adverse effect on our financial condition or results of operations. There is no action, suit, proceeding, inquiry or investigation before or by any court, public board, government agency, self-regulatory organization or body pending or, to the knowledge of the executive officers of our Company or any of our subsidiaries, threatened against or affecting our Company, our common stock, any of our subsidiaries or of our Company's or our Company's subsidiaries' officers or directors in their capacities as such, in which an adverse decision could have a material adverse effect.

22.     On March 9, 2018, Yangtze filed its annual report on Form 10-K with the SEC which provided its financial results and position for the fiscal year ended December 31, 2017 ("2017 10-K"). The 2017 10-K was signed by Defendants Liu and Chan. The 2017 10-K contained signed SOX by Defendants Liu and Chan attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23.     The 2017 10-K discussed the Wuhan Yangtze River Newport Logistics Center, stating in relevant part:

The Logistics Center will be an extensive complex located in Wuhan Newport Yangluo Port. Wuhan, the capital of the Hubei Province in the People's Republic of China is a major transportation hub city with access to numerous railways, roads and expressways passing through the city and connecting to major cities in China, as well as other international centers of commerce and business.

*        *        *

***The Logistics Center is expected to occupy approximately 1,918,000 square meters***, for which the construction and development are expected to be completed in three phases in three years and reach its target maximum annual profit by the end of 2022 assuming the entire funding required for construction of the Logistics Center of $1.03 billion is in place by 2021 and the Logistics Center is in operation per our business plan. We have updated our original time-frame and the following table illustrates the anticipated timeframe of our investment and construction progress.

(Emphasis added).

24.     The 2017 10-K discussed legal proceedings that the Company faced, stating in relevant part:

**Item 3. Legal Proceedings**

We are currently not involved in any litigation that we believe could have a materially adverse effect on our financial condition or results of operations. There is no action, suit, proceeding, inquiry or investigation before or by any court, public board, government agency, self-regulatory organization or body pending or, to the knowledge of the executive officers of our Company or any of our subsidiaries, threatened against or affecting our Company, our common stock, any of our subsidiaries or of our Company's or our Company's subsidiaries' officers or directors in their capacities as such, in which an adverse decision could have a material adverse effect.

25.     On April 20, 2018, Yangtze filed its quarterly report on Form 10-Q with the SEC for the quarter ended March 31, 2018 ("1Q18 10-Q"). The 1Q18 10-Q was signed by Defendants Liu and Chan. The 1Q18 10-Q contained signed SOX by Defendants Liu and Chan attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

26.     The 1Q18 10-Q discussed the Wuhan Yangtze River Newport Logistics Center, stating in relevant part:

*The Logistics Center is expected to occupy approximately 1,918,000 square meters,* for which the construction and development are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third years. The following table illustrates the timeframe of our investment and construction progress.

\*        \*        \*

*Wuhan Newport has signed a twenty-year lease agreement effective April 27, 2015, the maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center*. The warehouses are expected to comprise port terminal zones, warehouse logistics zones, cold chain supply zones and railroad loading and unloading zones. The warehouses will connect the port terminal along the Yangtze River and the railway leading to Europe, satisfying the requirement of China's latest "One Belt, One Road" initiative. It will also be able to support large

logistics companies in Wuhan and other nearby provinces which will rent the warehouses, terminals and offices within the Logistics Center.

(Emphasis added).

27.     The 1Q18 10-Q discussed legal proceedings that the Company faced, stating in relevant part:

**Item 1.          Legal Proceedings.**

We are currently not involved in any litigation that we believe could have a material adverse effect on our financial condition or results of operations. There is no action, suit, proceeding, inquiry or investigation before or by any court, public board, government agency, self-regulatory organization or body pending or, to the knowledge of the executive officers of our Company or any of our subsidiaries, threatened against or affecting our company, our common stock, any of our subsidiaries or of our companies or our subsidiaries' officers or directors in their capacities as such, in which an adverse decision could have a material adverse effect.

28.     On August 14, 2018, Yangtze filed its quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2018 ("2Q18 10-Q"). The 2Q18 10-Q was signed by Defendants Liu and Chan. The 2Q18 10-Q contained signed SOX by Defendants Liu and Chan attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

29.     The 2Q18 10-Q discussed the Wuhan Yangtze River Newport Logistics Center, stating in relevant part:

*__The Logistics Center is expected to occupy approximately 1,918,000 square meters__, for which the construction and development are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third years. The following table illustrates the timeframe of our investment and construction progress.*

*                    *          *          *

*__Wuhan Newport has signed a twenty-year lease agreement effective April 27, 2015, the maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the__*

***Logistics Center.*** The warehouses are expected to comprise port terminal zones, warehouse logistics zones, cold chain supply zones and railroad loading and unloading zones. The warehouses will connect the port terminal along the Yangtze River and the railway leading to Europe, satisfying the requirement of China's latest "One Belt, One Road" initiative. It will also be able to support large logistics companies in Wuhan and other nearby provinces which will rent the warehouses, terminals and offices within the Logistics Center.

(Emphasis added).

30.     The 2Q18 10-Q discussed legal proceedings that the Company faced, stating in relevant part:

**Item 1.          Legal Proceedings.**

We are currently not involved in any litigation that we believe could have a material adverse effect on our financial condition or results of operations. There is no action, suit, proceeding, inquiry or investigation before or by any court, public board, government agency, self-regulatory organization or body pending or, to the knowledge of the executive officers of our Company or any of our subsidiaries, threatened against or affecting our company, our common stock, any of our subsidiaries or of our companies or our subsidiaries' officers or directors in their capacities as such, in which an adverse decision could have a material adverse effect.

31.     On November 9, 2018, Yangtze filed its quarterly report on Form 10-Q with the SEC for the quarter ended September 30, 2018 ("3Q18 10-Q"). The 3Q18 10-Q was signed by Defendants Liu and Chan. The 3Q18 10-Q contained signed SOX by Defendants Liu and Chan attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

32.     The 3Q18 10-Q discussed the Wuhan Yangtze River Newport Logistics Center, stating in relevant part:

***The Logistics Center is expected to occupy approximately 1,918,000 square meters***, for which the construction and development are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third years. The following table illustrates the timeframe of our investment and construction progress.

\*     \*     \*

***Wuhan Newport has signed a twenty-year lease agreement effective April 27, 2015, the maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.*** The warehouses are expected to comprise port terminal zones, warehouse logistics zones, cold chain supply zones and railroad loading and unloading zones. The warehouses will connect the port terminal along the Yangtze River and the railway leading to Europe, satisfying the requirement of China's latest "One Belt, One Road" initiative. It will also be able to support large logistics companies in Wuhan and other nearby provinces which will rent the warehouses, terminals and offices within the Logistics Center.

(Emphasis added).

33.     The 3Q18 10-Q discussed legal proceedings that the Company faced, stating in relevant part:

> **Item 1.            Legal Proceedings.**
>
> We are currently not involved in any litigation that we believe could have a material adverse effect on our financial condition or results of operations. There is no action, suit, proceeding, inquiry or investigation before or by any court, public board, government agency, self-regulatory organization or body pending or, to the knowledge of the executive officers of our Company or any of our subsidiaries, threatened against or affecting our company, our common stock, any of our subsidiaries or of our companies or our subsidiaries' officers or directors in their capacities as such, in which an adverse decision could have a material adverse effect.

34.     The statements contained in ¶¶16-33 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Yangtze's purported lease of the Wuhan Yangtze River Newport Logistics Center, the Company's main asset, was a fabrication; (2) Yangtze's only operating subsidiary, Wuhan Newport, was declared insolvent in China due to a number of default judgments against it; and (3) as a result, Defendants' statements about its business, operations,

and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

35.     On August 27, 2018, before the market opened, *Barron's* published an article entitled, "A Troubled Chinese Company Is Seeking a Lifeline From U.S. Investors" which began to reveal information about Yangtze's legal proceedings, stating in relevant part:

> Meanwhile, the company's ***Wuhan operating subsidiary is showing up on official websites in which Chinese courts list debtors with unpaid legal judgments.*** Government websites listing "untrustworthy debtors" are a recent phenomenon in China, filling an information vacuum in a developing economy that doesn't yet have Western-style credit bureaus and rating agencies. ***The raft of unpaid bills attributed to Yangtze's subsidiary — Wuhan Yangtze River Newport Logistics Co — totals $120 million for more than a dozen cases.***

(Emphasis added).

36.     On this news shares of Yangtze fell $0.11 per share or almost 1% to close on $11.53 on August 27, 2018.

37.     On December 6, 2018, before the market opened, Hindenburg Research published a report entitled, "Yangtze River Port & Logistics: Total Zero. On-the-Ground Research Shows Assets Appear to be Largely Fabricated" ("Hindenburg Report"). The report discussed the Wuhan Yangtze River Newport Logistics Center, stating in relevant part:

> **Evidence Shows That YRIV's Claim to Its Main Asset Is Likely Fabricated**
>
> \*       \*       \*
>
> Given that the company reports total assets of $386 million (pg. F-1), the undeveloped Logistics Center land use rights comprise over 77% of the company's total asset base.
>
> The Logistics Center is intended to be built on 1.2 million square meters of land leased from Chunfeng Village.
>
> \*       \*       \*
>
> ***Our first clue that something was amiss came from the Hubei Provincial Government sourced records, which show that the total area of Chunfeng***

12

*village is 610,000 square meters; only half the size of the area YRIV claims to lease from the village:*

春风村位于新洲区阳逻街西部。

基本情况：春风村面积0.61平方公里，村民小组7个，户数330户，人口总数1328人，全村耕地面积亩，养殖水面亩。物产经济以水稻、棉花种植为主。村民收入主要来源于打工和水产。2011年村级集体经济收入达到5万元，人均纯收入9000元。

Total area of Chunfeng Village is 610,000 square meters (0.61 square kilometers.)

\*      \*      \*

Our team spoke with officials in the village committee and asked about their relationship with YRIV. ***When asked if they leased any land to the company, they replied that they had not. We also confirmed that the village is currently only 0.61 square kilometers.***

\*      \*      \*

Going one level deeper, we found further evidence that the company's "plan" to build a 1.2 million square meter facility on a plot of land half that size did not comport with geographic reality.

After consulting with local authorities and villagers, the on the ground team learned that most of the area YRIV claimed to lease from Chunfeng Village actually belongs to Junming Village (军民村), Jiangdi Village (江堤村) and/or the Huayou Pipe Base (华油管道基地). Chufeng Village barely overlaps with the area YRIV claims to lease.

\*      \*      \*

***All told, we think the supposed leased land for the Logistics Center is a total fabrication.***

(Emphasis added).

38.     The Hindenburg Report also discussed the legal proceedings facing the Company, stating in relevant part:

**YRIV Has Numerous Undisclosed Legal Proceedings & Judgements Against it and Its Operating Subsidiary Has Been Declared Insolvent in China**

YRIV has repeatedly claimed that they are "not involved in any litigation that [it] believe[s] could have a materially adverse effect on [its] financial condition." (Source: 2018, 2017*) Despite those representations, our research indicates that the precise opposite is in fact the case: the company's operating subsidiary, Wuhan Newport, has so many claims and default judgements against it that it has been declared insolvent in China, according to our search of Chinese court databases.*

In just one example, China Construction Bank is litigating with YRIV's operating subsidiary, Wuhan Newport, regarding $44 million in loans to the company. The loan is disclosed in YRIV's filings (pg. F-17):

**10. LOANS PAYABLE**

| Bank name | Term | December 31, 2017 | December 31, 2016 |
|---|---|---|---|
| China Construction Bank | From May 30, 2014 to May 29, 2020 | $   44,221,399 | $   41,456,074 |

However, the litigation relating to the exact loan is not disclosed in YRIV's SEC filings. Here is the Chinese and English translation of the litigation:

原告建行钢城支行诉称，2014年5月28日，**原告与被告新港公司**签订编号为GCDK2014-
090号**《固定资产贷款合同》**（以下简称贷款合同），约定新港公司向原告借款29000万元，**期限6年（2014年5月30日至2020年5月29日）**，贷款利率为基准利率上浮5%，**按季结息；**

……

**原告于2014年5月30日依**约向新港公司发放了贷款29000万元，**但新港公司并未依**约还款付息，担保人亦未履行担保责任，且新港公司、人和公司已出现涉及重大法律纠纷等情形。根据《贷款合同》的约定，原告有权宣布贷款立即到期并要求新港公司立即偿还《贷款合同》项下的所有到期及未到期的本金、利息和费用。

*Translation:*

The plaintiff China Construction Bank Gangcheng Branch states, on May 28, 2014, the plaintiff and the defendant Wuhan Newport executed No. GCDK 2014-

90 Fixed Assets Loan Agreement ("Loan Agreement") and stipulated that Wuhan Newport borrowed RMB 290 million from the plaintiff with the term of six years (May 30, 2014 to May 29, 2020), the interest shall be the base interest plus 5 % and quarterly interest payment.

The plaintiff (China Construction Bank) disbursed the loan payment RMB 290 million (USD 44 million) to YRIV on May 30, 2014. However, YRIV did not repay the interest and principal and the guarantor (Renhe Corp. the former shareholder of YRIV) did not perform its guarantee obligation. YRIV and Renhe Corp. were already involved in severe litigations.

*       *       *

*As Wuhan Newport cannot repay its legal obligation under these judgements, it has been added to the local list of dishonest judgement debtors. This means that in the event that Wuhan Newport (the operating subsidiary of YRIV) receives any investment money from its investors, it's already earmarked to fulfill its outstanding debt.*

(Emphasis added).

39.     On this news, shares of Yangtze fell $3.34 per share or over 28% over the next two trading days to close at $8.28 per share on December 7, 2018.

40.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Yangtze securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Yangtze, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Yangtze securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business Yangtze;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Yangtze to issue false and misleading SEC filings during the Class Period;

16

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of Yangtze securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

47.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Yangtze shares met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;

- As a public issuer, Yangtze filed periodic public reports with the SEC and NASDAQ;

- Yangtze regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Yangtze was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

48. Based on the foregoing, the market for Yangtze securities promptly digested current information regarding Yangtze from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

53. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Yangtze securities during the Class Period.

54.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Yangtze were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Yangtze, their control over, and/or receipt and/or modification of Yangtze's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Yangtze, participated in the fraudulent scheme alleged herein.

55.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Yangtze personnel to members of the investing public, including Plaintiff and the Class.

56.     As a result of the foregoing, the market price of Yangtze securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Yangtze securities during the Class Period in purchasing Yangtze securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

57.     Had Plaintiff and the other members of the Class been aware that the market price of Yangtze securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Yangtze securities at the artificially inflated prices that they did, or at all.

58.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

59.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Yangtze securities during the Class Period.

### COUNT II
#### Violations of Section 20(a) of the Exchange Act
#### Against the Individual Defendants

60.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation and management of Yangtze, and conducted and participated, directly and indirectly, in the conduct of Yangtze's business affairs. Because of their senior positions, they knew the adverse

non-public information about Yangtze's misstatement of revenue and profit and false financial statements.

62.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Yangtze's financial condition and results of operations, and to correct promptly any public statements issued by Yangtze which had become materially false or misleading.

63.      Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Yangtze disseminated in the marketplace during the Class Period concerning Yangtze's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Yangtze to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Yangtze within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Yangtze securities.

64.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Yangtze.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)      awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 2, 2019                      Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*