UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL BEHRENDSEN, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>YANGTZE RIVER PORT AND LOGISTICS LIMITED, XIANGYAO LIU, XIN ZHENG, and TSZ-KIT CHAN,<br><br>    Defendants. | Case No: 1-19-cv-00024-DLI-LB<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Lead Plaintiffs Michael Behrendsen and Marion Garcia ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' amended complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, including, among other things, a review of the Defendants' public documents, announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Yangtze River Port and Logistics Limited ("Yangtze" or "Company"), visits to the Company's place of business, interviews, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.    This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Yangtze securities between February 2, 2016 and December 5, 2018,

inclusive (the "Class Period"). Plaintiffs seek to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Unbeknownst to investors, Yangtze was and remains a sham. Defendants defrauded investors, raising money for the benefit of the Company's controller by reverse merging interests in purported foreign operations into a U.S. exchange listed shell-corporation.

3.      When Yangtze began trading on U.S. markets in December 2015, it claimed to be developing a large infrastructure project ("Port Logistics Center") under China's "One Belt One Road" initiative through its Chinese operating subsidiary, Wuhan Yangtze River Newport Logistics Co., Ltd. ("Wuhan Newport"). The Port Logistics Center would purportedly include shipping berths for cargo ships, residential and commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, and IT supporting services.

4.      Throughout the Class Period, Yangtze repeatedly claimed in public filings that it had assets of approximately $400 million, mostly in real estate properties and land lots under development.

5.      In reality, Yangtze was a scheme to enrich Xiangyao Liu ("Liu"), its controlling shareholders and Chief Executive Officer ("CEO"). Yangtze was not a firm capable of executing a major infrastructure projection. Rather, it operated from a two-bedroom apartment in lower Manhattan, raising cash to repay Liu for purported "advances" he made to the Company.

6.      Yangtze had no land assets, and no Port Logistics Center project in development or in progress. Chinese court records detail numerous closed enforcement actions against Wuhan Newport because it had no assets against which to collect. By July 2017, Wuhan Newport had

2

filed a bankruptcy petition in China. To date, it owes over $120 million in over a dozen cases and enforcement actions in Chinese courts.

7.      On December 6, 2018, before the market opened, Hindenburg Research published a report entitled "Yangtze River Port & Logistics: Total Zero. On-the-Ground Research Shows Assets Appear to be Largely Fabricated" ("Hindenburg Report").[1] The Hindenburg Report revealed that Hindenburg had carried out an investigation into Yangtze that showed that Wuhan Newport was insolvent, the Port Logistics Center was essentially a sham, and that nearly 80% of Yangtze's reported assets were fabricated.

8.      Defendants had repeatedly told investors that they intended to build the Port Logistics Center on 1.2 million square meters of land leased from Chunfeng Village. But, as Hindenburg Research reportered, Wuhan Newport had not actually leased 1.2 million square meters of land. Indeed, Chunfeng Village, a small, Chinese rural village, has a total area of only 610,000 square meters.

9.      Hindenburg Research also reported that the only project that Yangtze claimed it had partially developed already - the Wuhan Centre China Grand Steel Market ("Steel Market") – was a ghost town with no sign of activity.

10.     The Hindenburg Report also revealed that Yangtze was involved in numerous undisclosed legal proceedings and that Wuhan Newport has been declared insolvent in China, identifying at least 11 judgements filed against Wuhan Newport totaling RMB 766 million (USD $110 million).

---

[1] The Hindenburg Report is annexed hereto as Exhibit A.

11.     The Hindenburg Report also reported that proceeds from capital raises, including the 19 convertible notes the Company issued privately in 2018, have gone directly to Defendant Liu.

12.     On this news, shares of Yangtze fell from an $11.62 per share closing price on December 4, 2018, the last trading day before the release of the Hindenburg Report, to an $8.28 closing price on December 7, 2018, falling nearly 29% in two trading days.

13.     At Plaintiffs' behest, an investigator visited Wuhan in late April and early May 2019 to determine what, exactly, Wuhan Newport was doing and whether the Hindenburg Report was accurate. Plaintiffs' field investigation confirmed the Hindenburg Report.

14.     The investigator visited the Steel Market, Chunfeng Village and its surrounding villages, Junmin Village and Jiangdi Village, the Chungyue Building in the Yangluo Economic Development Zone of Wuhan Xinzhou District, where Yangtze is registered, and No. 7 Xudong Road, Kai Xuan Men Plaza, Hongshan District, Wuhan, the office address listed on Yangtze's website.

15.     The Steel Market, like the Hindenburg Report described it, was a ghost town. Plaintiffs' investigator learned from three confidential witnesses who had previously worked at the Steel Market that the Steel Market was built in 2011 and 2012 but experienced difficulties after one year, including disputes with local residents who were unwilling to relocate, and remains empty. As of 2019, the local government is looking for new ownership for the property, which will no longer be a steel market but an office building and residential district. Wuhan Newport does not own the Steel Market.

16.     Plaintiffs' investigator also confirmed that there is absolutely no sign that Wuhan Newport has leased land in Chunfeng Village for the development of the Port Logistics Center.

4

Chunfeng Village is a small, traditional Chinese rural village with a total area of only 610,000 square meters – half the area that Defendants claimed the Company had leased. There is no evidence that Wufan Newport has leased land at all, either in Chunfeng Village or in the surrounding villages, Junmin Village and Jiangdi Village.

17.     Plaintiffs' investigator found no evidence of Yangtze's presence in the Chuangye Building in Wuhan, where Wuhan Newport is registered with the government of the People's Republic of China ("PRC").

18.     Plaintiffs' investigator located a Yangtze office on the 18th floor of No. 7 Xudong Road, Kai Xuan Men Plaza, Hongshan District, Wuhan. At the time that Plaintiffs' investigator visited the building, however, there were no people working in the office.

19.     Plaintiffs also carried out a search of court judgments in China. Plaintiff identified 33 judgments against Wuhan Newport since 2016. The judgments, which are not available in English, indicate that a court froze Wuhan Newport's assets as early as 2016, that Wuhan Newport had filed a bankruptcy petition by July 2017, and that by November 2017, Wuhan Newport had no assets in China.

20.     Defendants' false statements about the value of the Company's assets and its development plans artificially inflated the value of Yangtze's stock during the Class Period.

**JURISDICTION AND VENUE**

21.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

22.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

23.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

24.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

25.     As listed in their certifications, filed with their Lead Plaintiff Motion in this case (ECF No. 6-2), Plaintiffs acquired Yangtze securities at artificially inflated prices during the Class Period and were economically damaged thereby.

26.     Defendant Yangtze is a Nevada corporation with headquarters in New York City. Yangtze operates through its wholly-owned subsidiary, Energetic Mind Limited ("Energetic Mind"), a British Virgin Islands corporation, which in turn operates through its wholly-owned subsidiary, Ricofeliz Capital (HK) Limited ("Ricofeliz Capital"), a Hong Kong corporation, which in turn operates through its wholly-owned subsidiary, Wuhan Newport, a PRC corporation. Yangtze reached the U.S. markets through a reverse merger. Yangtze's securities trade on NASDAQ under the ticker symbol "YRIV."

27.     Defendant Liu, the Company's controlling shareholders, served as its CEO and Chairman of the Board of Directors ("Board") during the Class Period.

28.     Defendant Xin Zheng ("Zheng") served as the Company's Chief Financial Officer ("CFO") from the beginning of the Class Period until May 2017.

29.     Defendant Tsz-Kit Chan ("Chan") has served as the Company's CFO since May 2017.

30.     Defendant James Coleman ("Coleman") served as the Company's Board's Executive Director during the Class Period and was its Chief Representative in the U.S.

31.     Defendant Harvey Leibowitz ("Leibowitz") served as a member of the Company's Board and the chair of the Board's Audit Committee during the Class Period.

32.     Collectively Defendants Liu, Zheng, Chan, Coleman, and Leibowitz are the "Individual Defendants." Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

33.     Yangtze is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

34.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Yangtze under *respondeat superior* and agency principles.

35.     Defendants Yangtze and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

36.     Yangtze was a fraud from its inception. On December 23, 2009, Imran Hussain ("Hussain") and Gregg Jaclin ("Jaclin") incorporated Ciglarette, Inc. ("Ciglarette") in Nevada, purportedly to market and distribute e-cigarettes. In fact, Hussain and Jaclin incorporated Ciglarette as part of a fraudulent "shell factory" enterprise. In this scheme, Hussain and Jaclin created public "shell" companies that had virtually no assets or operations and had no legitimate business purpose, in order to sell them to buyers who sought to trade on the U.S. market without filing another registration statement. As part of this scheme, Husain created a written "business plan" for Ciglarette and convinced a person he controlled to be its CEO in name only. Husain then told the puppet CEO to engage Jaclin's law firm to incorporate the company, prepare the documents for a private offering of the company's shares of stock, take the company public, and obtain clearance for the company's stock to trade publicly.

37.     After Husain and Jaclin incorporated Ciglarette, Husain orchestrated a sham private placement offering of the company's shares to straw shareholders. Jaclin prepared the documents for the offering, including a subscription agreement, which documented each straw

shareholder's purchase of shares, and an investor questionnaire, to give the appearance that the investor was bona fide. Although this made it appear as if unaffiliated investors owned a material state in Ciglarette, Husain maintained control of the company, and he and Jaclin never relinquished control of its shares.

38.     On April 28, 2010, upon completing the straw-person private placement, Ciglarette filed with the SEC a Form S-1 registration statement. It then filed periodic reports with the SEC. Husain and Jaclin together provided materially false and misleading information to market makers to obtain clearance for Ciglarette shares to trade publicly.

39.     On March 1, 2011, Husain and Jaclin sold Ciglarette through a reverse merger and changed its name to Kirin International Holding, Inc. ("Kirin"). On March 14, 2011, Kirin offered and sold its shares to the public. The shares traded on the Over the Counter Bulletin Board ("OTCBB") under the symbol "KIRI."

40.     In December 2015, Yangtze entered the U.S. stock market through a reverse merger with Kirin. Jaclin represented Kirin in the transaction. Kirin effectively acquired all of the issued and outstanding ordinary shares of Energetic Mind, a British Virgin Islands company. Energetic Mind had a wholly owned subsidiary formed under the laws of Hong Kong, Ricofeliz Capital. Wuhan Newport, in turn, was the wholly owned subsidiary of Ricofeliz Capital. Since the reverse merger, Yangtze has operated through Energetic Mind, which operates through Ricofeliz Capital, which operates through Wuhan Newport. On January 13, 2016, Yangtze filed a Certificate of Amendment to its Articles of Incorporation with the Secretary of the State of the State of Nevada, changing its name from "Kirin International Holding, Inc." to "Yangtze River Development Limited." Effective January 22, 2016, Company changed its stock symbol from "KIRI" to "YERR."

41.     According to an 8-K Defendants filed with the SEC on December 21, 2015, Wuhan Newport was a developer that was focused on developing the Port Logistics Center, a large infrastructure project implemented under China's latest "One Belt One Road" initiative

42.     The Company boasted that the Port Logistics Center was believed to be strategically positioned in the anticipated "Free Trade Zone" of the Wuhan Port, an important trading window between China, the Middle East, and Europe. The project was planned to include six operating zones, including a port operation area, warehouse and distribution area, cold chain logistics area, rail cargo loading area, exhibition area, and residential community. The Company stated that the logistics center would provide a number of shipping berths for cargo ships of various sizes, as well as residential and commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, and IT supporting services.

43.     The Port Logistics Center was not yet built. According to the annual report that Yangtze filed on Form 10-K with the SEC on February 2, 2016, providing its financial results and position for the fiscal year ended December 31, 2015 ("2015 10-K"), the Company's only constructed project, which was still in the development process, was the Steel Market.

44.     Coleman became the Executive Director of Yangtze, as well as its chief representative in the United States. Coleman has never before been a director of a publicly-traded company and has twice filed for personal bankruptcy protection. His last venture, a drug rehabilitation project in Florida, went bankrupt. Yangtze's U.S. office was (and continues to be) Coleman's two-bedroom apartment at 41 John Street, New York, New York.

45.     Leibowitz became an independent director of Yangtze and the chair of the Audit Committee of the Board, lending his credibility as a U.S.-based banking executive to the

10

Company.

46.     Yangtze had no revenue, so from early 2016, Defendants attempted to raise additional funds through public offerings. On February 18, 2016, Defendants filed with the SEC a Registration Statement on Form S-1 ("Registration Statement"), proposing a $50 million public offering. The Registration listed shell-company fraudster Jaclin as the attorney of record for the Company. On March 31, 2016, May 17, 2016, June 17, 2016, and July 29, 2016, Defendants filed amendments to the Registration Statement, delaying its effective date. On September 9, 2016, Defendants amended the Registration Statement, again delaying its effective date and reducing the proposed amount to $40 million. On October 24, 2016, November 30, 2016, December 20, 2016, January 9, 2017, December 28, 2017, and March 17, 2017, Defendants again amended the Registration Statement, delaying its effective date. Then, on April 27, 2017, Defendants withdrew the Registration Statement.

47.     On October 10, 2016, Yangtze announced that it had secured $1 billion in financing from a U.S. company, Armada Enterprises ("Armada"). As part of the transaction, Yangtze agreed to engage Armada-related Wight International Construction LLC as its construction firm for the Port Logistics Center.

48.     By February 2017, the purported deal was off. At this point, Yangtze had no revenue, next to no cash, $191 million in recorded purported liabilities, and had made essentially no investments in the Port Logistics Center project.

49.     On April 18, 2017, Defendants announced that Yangtze's common stock had been approved for listing on the NASDAQ Capital Market, and would begin trading on the market the next day.

50.     On May 4, 2017, Defendants filed a registration statement on Form S-3 with the

SEC proposing a $300 million public offering, but withdrew it on March 20, 2018.

51.     On February 13, 2018, Defendants announced that the Company's common stock would begin trading on the NASDAQ Global Select Market under the new ticker symbol YRIV as of market open on February 14, 2018.

52.     On March 20, 2018 Defendants filed a registration statement on Form S-3 with the SEC proposing a $300 million public offering, which they amended on April 24, 2018, July 17, 2018, August 13, 2018, and September 7, 2018 to delay its effective date.

## Materially False and Misleading
## Statements Issued During the Class Period

53.     On February 2, 2016, Yangtze filed the 2015 10-K with the SEC, providing its financial results and position for the fiscal year ended December 31, 2015. The 2015 10-K was signed by Defendants Liu, Zheng, Coleman, and Leibowitz. The 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Liu and Zheng attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

54.     The 2015 10-K was materially false and misleading because Defendants knew or recklessly disregarded that it falsely reported the Company's assets. According to the 2015 10-K, Yangtze had $406,986,613 in assets as of December 31, 2015, most of it in real estate properties and land lots under development that the Company reported to be valued at $364,876,105. Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $364,876,105. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan

Newport has had no assets in China since the second half of 2017 at the latest, and that any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

55.    The 2015 10-K also discussed the Company's developments, stating in relevant part:

> One of the main projects of our Company is the Wuhan Yangtze River Newport Logistics Center (the "Logistics Center"), which is an extensive complex that is located in Wuhan, the capital of Hubei Province of China, a major transportation hub with dozens of railways, roads and expressways passing through the city and connecting to major cities in Mainland China, with connections to international centers of commerce and business.
>
> *       *       *
>
> Wuhan Newport has signed an agreement to rent 1.2 million square meters of land on a long term basis for building logistics warehouses covering 400,000 square meters in support of the new port. The warehouses is expected to comprise of port terminal zones, warehouse logistics zones, cold chain supply zones and railroad loading and unloading zones. The warehouses, once constructed, will connect the port terminal along the Yangtze River and the railway leading to Europe, satisfying the requirement of China's latest "One Belt, One Road" initiative. It will also be able to support large logistics companies in Wuhan and other nearby provinces that lease the warehouses, terminals and offices.
>
> *       *       *
>
> Taking into consideration the Comprehensive Bonded Zone and Free Trade Zone status of the Logistic Center, Wuhan Newport has obtained the land use rights to own approximately 500,000 square meters of commercial lands on which Wuhan Newport will build a mixed residential and office complex of approximately 700,000 square meters. As of the date of this Annual Report, mixed-use complex totaling approximately 100,000 square meters have been completed and there are outstanding 600,000 square meters to be constructed in three phases within the next five (5) years.
>
> *       *       *

> As of December 31, 2015, the sole developing project is called
> Wuhan Centre China Grand Steel Market (Phase 1) Commercial
> Building in Wuhan Yangluo Economic Development Zone with
> approximately 222,496.6 square meters of total construction area.

The Company also specifically reported that as of December 31, 2015, it had leased 1,214,654.52 square meters of land in Chunfeng Village.

56.     The foregoing statements were materially false and misleading. First, Defendants knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center. Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented land to develop the Port Logistics Center in Chungfeng Village. Chunfeng Village is a small, traditional Chinese rural village with a total area of only 610,000 square meters – half the area that Defendants claimed the Company had leased. Plaintiffs' investigator found no sign that Wufan Newport has leased land either in Chunfeng Village or the surrounding villages, Junmin Village and Jiangdi Village. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district.

57.     The 2015 10-K also discussed legal proceedings that the Company faced, stating that:

> We are currently not involved in any litigation that we believe
> could have a material adverse effect on our financial condition or
> results of operations. There is no action, suit, proceeding, inquiry
> or investigation before or by any court, public board, government
> agency, self-regulatory organization or body pending or, to the
> knowledge of the executive officers of our company or any of our
> subsidiaries, threatened against or affecting our company, our
> common stock, any of our subsidiaries or of our companies or our

subsidiaries' officers or directors in their capacities as such, in which an adverse decision could have a material adverse effect.

58.     The foregoing statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport was involved in litigation that materially adversely affected its financial condition and operations. By late 2017, Wuhan Newport had filed a bankruptcy petition and had so many claims and default judgments pending against it that it has been declared insolvent in China. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. In addition, an individual who had purchased a commercial apartment from Wuhan Newport in 2011 had sued for failure to deliver the apartment.

59.     On May 9, 2016, Yangtze filed its quarterly report on Form 10-Q with the SEC, which provided its financial results and position for the quarter ended March 31, 2016 (the "1Q 2016 10-Q"). The 1Q 2016 10-Q contained signed certifications pursuant to SOX by Defendants Liu and Zheng attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

60.     The 1Q 2016 10-Q was materially false and misleading because it falsely reported the Company's assets. According to the 1Q 2016 10-Q, Yangtze had $408,714,969 in assets as of March 31, 2016, most of it in real estate properties and land lots under development that the Company reported to be valued at $367,332,893.

61.     Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $367,332,893. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found

15

no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan Newport has had no assets in China since the second half of 2017 at the latest, and that any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

62.     The 1Q 2016 10-Q discussed the Company's purported developments, stating in relevant part:

> Situated in the middle reaches of the Yangtze River, Wuhan Newport is a large infrastructure development project implemented under China's latest "One Belt One Road" initiative and is believed to be strategically positioned in the anticipated "Pilot Free Trade Zone" of the Wuhan Port, a crucial trading window among China, the Middle East and Europe. To be fully developed upon completion, within the logistics center, there will be six operating zones: including port operation area, warehouse and distribution area, cold chain logistics area, rail cargo loading area, exhibition area and business related area. The logistics center is also expected to provide a number of shipping berths for cargo ships of various sizes. Wuhan Newport is expected to provide domestic and foreign businesses a direct access to the anticipated Free Trade Zone in Wuhan. The project will include commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, IT supporting services, among others.
>
> Our Logistics Center is an extensive complex located in Wuhan, the capital of Hubei Province of China, a major transportation hub city with access to numerous railways, roads and expressways passing through the city and connecting to major cities in China, as well as other international centers of commerce and business.
>
> The Logistics Center is expected to occupy approximately 1,918,000 square meters, for which the construction and development are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third year.

*     *     *

> Wuhan Newport has signed a twenty-year lease agreement, maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015 to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.
>
> \*     \*     \*
>
> As of March 31, 2016, the sole developing project is called Wuhan Centre China Grand Steel Market (Phase 1) Commercial Building in Wuhan Yangluo Economic Development Zone with approximately 222,496.6 square meters of total construction area.

63.     The foregoing statements were materially false and misleading. First, Defendants knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center. Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented 1,200,000 square meters of land to develop the Port Logistics Center. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district.

64.     The 1Q 2016 10-Q also discussed legal proceedings that the Company faced, stating that "[t]he Company is not currently a party to any legal proceeding, investigation or claim which, in the opinion of the management, is likely to have a material adverse effect on the business, financial condition or results of operations."

65.     The foregoing statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport was involved in litigation that materially adversely affected its financial condition and operations. By late 2017, Wuhan Newport had filed a bankruptcy petition and had so many claims and default judgments pending against it that it has

been declared insolvent in China. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit.

66.     On August 1, 2016, Yangtze filed its quarterly report on Form 10-Q with the SEC, which provided its financial results and position for the quarter ended June 30, 2016 (the "2Q 2016 10-Q"). The 2Q 2016 10-Q contained signed certifications pursuant to SOX by Defendants Liu and Zheng attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

67.     The 2Q 2016 10-Q was materially false and misleading because it falsely reported the Company's assets. According to the 2Q 2016 10-Q, Yangtze had $396,030,739 in assets as of June 30, 2016, most of it in real estate properties and land lots under development that the Company reported to be valued at $356,645,371.

68.     Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $356,645,371. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan Newport has had no assets in China since the second half of 2017 at the latest, and that any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

69.     The 2Q 2016 10-Q discussed the Company's purported developments, stating in relevant part:

Situated in the middle reaches of the Yangtze River, Wuhan Newport is a large infrastructure development project implemented under China's latest "One Belt One Road" initiative and is believed to be strategically positioned in the anticipated "Pilot Free Trade Zone" of the Wuhan Port, a crucial trading window among China, the Middle East and Europe. To be fully developed upon completion, within the logistics center, there will be six operating zones: including port operation area, warehouse and distribution area, cold chain logistics area, rail cargo loading area, exhibition area and business related area. The logistics center is also expected to provide a number of shipping berths for cargo ships of various sizes. Wuhan Newport is expected to provide domestic and foreign businesses a direct access to the anticipated Free Trade Zone in Wuhan. The project will include commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, IT supporting services, among others.

Our Logistics Center is an extensive complex located in Wuhan, the capital of Hubei Province of China, a major transportation hub city with access to numerous railways, roads and expressways passing through the city and connecting to major cities in China, as well as other international centers of commerce and business.

The Logistics Center is expected to occupy approximately 1,918,000 square meters, for which the construction and development are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third year.

\*       \*       \*

Wuhan Newport has signed a twenty-year lease agreement, maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015 to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.

\*       \*       \*

As of June 30, 2016, the sole developing project is called Wuhan Centre China Grand Steel Market (Phase 1) Commercial Building in Wuhan Yangluo Economic Development Zone with approximately 222,496.6 square meters of total construction area.

70.     The foregoing statements were materially false and misleading. First, Defendants knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center. Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented 1,200,000 square meters of land to develop the Port Logistics Center. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district.

71.     The 2Q 2016 10-Q also discussed legal proceedings that the Company faced, stating that "[t]he Company is not currently a party to any legal proceeding, investigation or claim which, in the opinion of the management, is likely to have a material adverse effect on the business, financial condition or results of operations."

72.     The foregoing statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport was involved in litigation that materially adversely affected its financial condition and operations. By late 2017, Wuhan Newport had filed a bankruptcy petition and had so many claims and default judgments pending against it that it has been declared insolvent in China. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit.

73.     On October 24, 2016, Yangtze filed its quarterly report on Form 10-Q with the SEC, which provided its financial results and position for the quarter ended September 30, 2016 (the "3Q 2016 10-Q"). The 3Q 2016 10-Q contained signed certifications pursuant to SOX by

Defendants Liu and Zheng attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

74. The 3Q 2016 10-Q was materially false and misleading because it falsely reported the Company's assets. According to the 3Q 2016 10-Q, Yangtze had $394,834,633 in assets as of September 30, 2016, most of it in real estate properties and land lots under development that the Company reported to be valued at $355,315,562.

75. Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $355,315,562. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan Newport has had no assets in China since the second half of 2017 at the latest, and that any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

76. The 3Q 2016 10-Q discussed the Company's purported developments, stating in relevant part:

> Situated in the middle reaches of the Yangtze River, Wuhan Newport is a large infrastructure development project implemented under China's latest "One Belt One Road" initiative and is believed to be strategically positioned in the anticipated "Pilot Free Trade Zone" of the Wuhan Port, a crucial trading window among China, the Middle East and Europe. To be fully developed upon completion, within the logistics center, there will be six operating zones: including port operation area, warehouse and distribution area, cold chain logistics area, rail cargo loading area, exhibition area and business related area. The logistics center is also expected to provide a number of shipping berths for cargo ships of various sizes. Wuhan Newport is expected to provide domestic and foreign

businesses a direct access to the anticipated Free Trade Zone in Wuhan. The project will include commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, IT supporting services, among others.

Our Logistics Center is an extensive complex located in Wuhan, the capital of Hubei Province of China, a major transportation hub city with access to numerous railways, roads and expressways passing through the city and connecting to major cities in China, as well as other international centers of commerce and business.

The Logistics Center is expected to occupy approximately 1,918,000 square meters, for which the construction and development are expected to be completed in three phases in three years and reach its target maximum annual profit by the end of 2021.

\*       \*       \*

Wuhan Newport has signed a twenty-year lease agreement, maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015 to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.

\*       \*       \*

As of September 30, 2016, the sole and wholly owned developing project of the Company is called Wuhan Centre China Grand Steel Market (Phase 1) Commercial Building in the south of Hans Road, Wuhan Yangluo Economic Development Zone with approximately 222,496.6 square meters of total construction area.

77.    The foregoing statements were materially false and misleading. First, Defendants knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center. Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented 1,200,000 square meters of land to develop the Port Logistics Center. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced

difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district.

78.     The 3Q 2016 10-Q also discussed legal proceedings that the Company faced, stating that "[t]he Company is not currently a party to any legal proceeding, investigation or claim which, in the opinion of the management, is likely to have a material adverse effect on the business, financial condition or results of operations."

79.     The foregoing statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport was involved in litigation that materially adversely affected its financial condition and operations. By late 2017, Wuhan Newport had filed a bankruptcy petition and had so many claims and default judgments pending against it that it has been declared insolvent in China. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit.

80.     On March 10, 2017, Yangtze filed its annual report on Form 10-K with the SEC which provided its financial results and position for the fiscal year ended December 31, 2016 ("2016 10-K"). The 2016 10-K was signed by Defendants Liu, Zheng, Coleman, and Leibowitz. The 2016 10-K contained signed SOX certifications by Defendants Liu and Zheng attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

81.     The 2016 10-K was materially false and misleading because it falsely reported the Company's assets. According to the 2016 10-K, Yangtze had $379,711,509 in assets as of December 31, 2016, most of it in real estate properties and land lots under development that the

Company reported to be valued at $341,427,234.

82.      Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $341,427,234. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan Newport has had no assets in China since the second half of 2017 at the latest, and that any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

83.      The 2016 10-K discussed the Company's purported developments, stating in relevant part:

> The Wuhan Yangtze River Newport Logistics Center (the "Logistics Center"), is an extensive complex located in Wuhan, the capital of the Hubei Province of China, a major transportation hub city with access to numerous railways, roads and expressways passing through the city and connecting to major cities in China, as well as other international centers of commerce and business.
>
> *      *      *
>
> The Logistics Center is expected to occupy approximately 1,918,000 square meters, for which the construction and development are expected to be completed in three phases in three years and reach its target maximum annual profit by the end of 2021 assuming the entire funding required for construction of the Logistics Center of $1.03 billion is in place by 2020 and the Logistics Center is in operation per our business plan.
>
> *      *      *
>
> Wuhan Newport has signed a twenty-year lease agreement, the maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015, to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center. The warehouses are expected to be comprised of port terminal zones, warehouse logistics zones, cold chain supply zones and

24

railroad loading and unloading zones. The warehouses, once constructed, will connect the port terminal along the Yangtze River and the railway leading to Europe, satisfying the requirement of China's latest "One Belt, One Road" initiative. It will also be able to support large logistics companies in Wuhan and other nearby provinces which will rent the warehouses, terminals and offices within the Logistics Center.

*       *       *

As of December 31, 2016, the sole and wholly owned developing project of the Company is called Wuhan Centre China Grand Steel Market (Phase 1) Commercial Building in the south of Hans Road, Wuhan Yangluo Economic Development Zone with approximately 222,496.6 square meters of total construction area.

The Company also specifically reported that as of December 31, 2015, it had leased 1,214,654.52 square meters of land in Chunfeng Village.

84.     The foregoing statements were materially false and misleading. First, Defendants knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center. Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented land to develop the Port Logistics Center in Chungfeng Village. Chunfeng Village is a small, traditional Chinese rural village with a total area of only 610,000 square meters – half the area that Defendants claimed the Company had leased. Plaintiffs' investigator found no sign that Wufan Newport has leased land either in Chunfeng Village or the surrounding villages, Junmin Village and Jiangdi Village. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district.

85.     The 2016 10-K discussed legal proceedings that the Company faced, stating that:

25

> We are currently not involved in any litigation that we believe could have a materially adverse effect on our financial condition or results of operations. There is no action, suit, proceeding, inquiry or investigation before or by any court, public board, government agency, self-regulatory organization or body pending or, to the knowledge of the executive officers of our Company or any of our subsidiaries, threatened against or affecting our Company, our common stock, any of our subsidiaries or of our Company's or our Company's subsidiaries' officers or directors in their capacities as such, in which an adverse decision could have a material adverse effect.

86.     The foregoing statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport was involved in litigation that materially adversely affected its financial condition and operations. By late 2017, Wuhan Newport had filed a bankruptcy petition and had so many claims and default judgments pending against it that it has been declared insolvent in China. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. In addition, an individual who had purchased a commercial apartment from Wuhan Newport in 2011 had sued for failure to deliver the apartment.

87.     On April 17, 2017, Yangtze issued a press release announcing that its common stock had been approved for listing on the NASDAQ Capital Market and would commence trading under the ticker symbol "YERR" on April 19, 2017. The press release stated:

> Yangtze River Development Limited primarily engages in the business of real estate development with a port logistic project located in the middle reaches of the Yangtze River. Wuhan Newport is a large infrastructure development project implemented under China's latest "One Belt One Road" initiative and is strategically positioned in the "Free Trade Zone" of the Wuhan Port, a crucial trading window between China, the Middle East and Europe. To be fully developed upon completion of three phases, within the logistics center, there will be six operating zones, including port operation area, warehouse and distribution

area, cold chain logistics area, rail cargo loading area, exhibition area and residential community. The logistics center is also expected to provide a number of shipping berths for cargo ships of various sizes. Wuhan Newport is expected to provide domestic and foreign businesses a direct access to the anticipated Free Trade Zone in Wuhan. The project will include commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, IT supporting services, among others.

88.     The foregoing statement was materially false and misleading. Plaintiffs' field investigation confirmed that Wuhan Newport was not developing the Port Logistics Center.

89.     On May 8, 2017, Yangtze filed its quarterly report on Form 10-Q with the SEC, which provided its financial results and position for the quarter ended March 31, 2016 (the "1Q 2017 10-Q"). The 1Q 2017 10-Q contained signed certifications pursuant to SOX by Defendants Liu and Zheng attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

90.     The 1Q 2017 10-Q was materially false and misleading because it falsely reported the Company's assets. According to the 1Q 2017 10-Q, Yangtze had $383,138,526 in assets as of March 31, 2017, most of it in real estate properties and land lots under development that the Company reported to be valued at $344,292,417.

91.     Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $344,292,417. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan Newport has had no assets in China since the second half of 2017 at the latest, and that

any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

92.     The 1Q 2017 10-Q discussed the Company's purported developments, stating in relevant part:

> Situated in the middle reaches of the Yangtze River, Wuhan Newport is a large infrastructure development project implemented under China's latest "One Belt One Road" initiative and is believed to be strategically positioned in the anticipated "Pilot Free Trade Zone" of the Wuhan Port, a crucial trading window among China, the Middle East and Europe. To be fully developed upon completion, within the logistics center, there will be six operating zones: including port operation area, warehouse and distribution area, cold chain logistics area, rail cargo loading area, exhibition area and business related area. The logistics center is also expected to provide a number of shipping berths for cargo ships of various sizes. Wuhan Newport is expected to provide domestic and foreign businesses a direct access to the anticipated Free Trade Zone in Wuhan. The project will include commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, IT supporting services, among others.

> Our Logistics Center is an extensive complex located in Wuhan, the capital of Hubei Province of China, a major transportation hub city with access to numerous railways, roads and expressways passing through the city and connecting to major cities in China, as well as other international centers of commerce and business.

> The Logistics Center is expected to occupy approximately 1,918,000 square meters, for which the construction and development are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third year.

> *       *       *

> Wuhan Newport has signed a twenty-year lease agreement, maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015 to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.

28

\*       \*       \*

> As of March 31, 2017, the sole developing project is called Wuhan Centre China Grand Steel Market (Phase 1) Commercial Building in Wuhan Yangluo Economic Development Zone with approximately 222,496.6 square meters of total construction area.

93.     The foregoing statements were materially false and misleading. First, Defendants knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center. Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented 1,200,000 square meters of land to develop the Port Logistics Center. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district.

94.     The 1Q 2017 10-Q also discussed legal proceedings that the Company faced, stating that "[t]he Company is not currently a party to any legal proceeding, investigation or claim which, in the opinion of the management, is likely to have a material adverse effect on the business, financial condition or results of operations."

95.     The foregoing statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport was involved in litigation that materially adversely affected its financial condition and operations. By late 2017, Wuhan Newport had filed a bankruptcy petition and had so many claims and default judgments pending against it that it has been declared insolvent in China. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. On January 3, 2017, a court ruled in favor

of an individual who had purchased a commercial apartment from Wuhan Newport in 2011 and had sued for failure to deliver the apartment. On May 3, 2017, a court dismissed Yangtze's request to not enforce an arbitration award.

96.     On August 3, 2017, Yangtze filed its quarterly report on Form 10-Q with the SEC, which provided its financial results and position for the quarter ended June 30, 2016 (the "2Q 2017 10-Q"). The 2Q 2017 10-Q contained signed certifications pursuant to SOX by Defendants Liu and Zheng attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

97.     The 2Q 2017 10-Q was materially false and misleading because it falsely reported the Company's assets. According to the 2Q 2017 10-Q, Yangtze had $389,398,732 in assets as of June 30, 2017, most of it in real estate properties and land lots under development that the Company reported to be valued at $349,604,828.

98.     Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $349,604,828. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan Newport has had no assets in China since the second half of 2017 at the latest, and that any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

99.     The 2Q 2017 10-Q also discussed the Company's purported developments, stating in relevant part:

Situated in the middle reaches of the Yangtze River, Wuhan Newport is a large infrastructure development project implemented under China's latest "One Belt One Road" initiative and is believed to be strategically positioned in the anticipated "Pilot Free Trade Zone" of the Wuhan Port, a crucial trading window among China, the Middle East and Europe. To be fully developed upon completion, within the logistics center, there will be six operating zones: including port operation area, warehouse and distribution area, cold chain logistics area, rail cargo loading area, exhibition area and business related area. The logistics center is also expected to provide a number of shipping berths for cargo ships of various sizes. Wuhan Newport is expected to provide domestic and foreign businesses a direct access to the anticipated Free Trade Zone in Wuhan. The project will include commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, IT supporting services, among others.

Our Logistics Center is an extensive complex located in Wuhan, the capital of Hubei Province of China, a major transportation hub city with access to numerous railways, roads and expressways passing through the city and connecting to major cities in China, as well as other international centers of commerce and business.

The Logistics Center is expected to occupy approximately 1,918,000 square meters, for which the construction and development are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third year.

\*      \*      \*

Wuhan Newport has signed a twenty-year lease agreement, maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015 to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.

\*      \*      \*

As of June 30, 2017, the sole and wholly owned developing project of the Company is called Wuhan Centre China Grand Steel Market (Phase 1) Commercial Building in the south of Hans Road, Wuhan Yangluo Economic Development Zone with approximately 222,496.6 square meters of total construction area.

31

100.     The foregoing statements were materially false and misleading. First, Defendants knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center. Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented 1,200,000 square meters of land to develop the Port Logistics Center. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district.

101.     The 2Q 2017 10-Q also discussed legal proceedings that the Company faced, stating that "[t]he Company is not currently a party to any legal proceeding, investigation or claim which, in the opinion of the management, is likely to have a material adverse effect on the business, financial condition or results of operations."

102.     The foregoing statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport was involved in litigation that materially adversely affected its financial condition and operations. By July 2017, Wuhan Newport had filed a bankruptcy petition. By November 2017, it had so many claims and default judgments pending against it that it has been declared insolvent in China.. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. By the time that Defendants filed the 2Q 2017 10-Q, there were numerous court judgments ordering Yangtze to buy back commercial apartments that it failed to deliver.

103.     The 2Q 2017 10-Q also discussed the risk that liquidation proceeds posed to the

Company, stating:

> **OUR BUSINESS MAY BE MATERIALLY AND ADVERSELY AFFECTED IF ANY OF OUR PRC SUBSIDIARIES DECLARES BANKRUPTCY OR BECOMES SUBJECT TO A DISSOLUTION OR LIQUIDATION PROCEEDING.**
>
> The Enterprise Bankruptcy Law of the PRC, or the Bankruptcy Law, came into effect on June 1, 2007. The Bankruptcy Law provides that an enterprise will be liquidated if the enterprise fails to settle its debts as and when they fall due and if the enterprise's assets are, or are demonstrably, insufficient to clear such debts.
>
> Our PRC subsidiaries hold certain assets that are important to our business operations. If our PRC subsidiaries undergo a voluntary or involuntary liquidation proceeding, unrelated third-party creditors may claim rights to some or all of these assets, thereby hindering our ability to operate our business, which could materially and adversely affect our business, financial condition and results of operations.

104.    The foregoing statement was statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport **had actually filed a bankruptcy petition.** On July 13, 2017, an appellate court in China affirmed a lower court decision holding that the lower court had jurisdiction over Wuhan Newport's civil litigation cases once the court accepted its bankruptcy petition. This decision was not available in English.

105.    On October 31, 2017, Yangtze filed its quarterly report on Form 10-Q with the SEC, which provided its financial results and position for the quarter ended September 30, 2016 (the "3Q 2017 10-Q"). The 3Q 2017 10-Q contained signed certifications pursuant to SOX by Defendants Liu and Zheng attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

106.    The 3Q 2017 10-Q was materially false and misleading because it falsely reported the Company's assets. According to the 3Q 2017 10-Q, Yangtze had $397,418,107 in assets as of

September 30, 2017, most of it in real estate properties and land lots under development that the Company reported to be valued at $356,272,174.

107.     Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $356,272,174. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan Newport has had no assets in China since the second half of 2017 at the latest, and that any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

108.     The 3Q 2017 10-Q discussed the Company's purported developments, stating in relevant part:

> Situated in the middle reaches of the Yangtze River, Wuhan Newport is a large infrastructure development project implemented under China's latest "One Belt One Road" initiative and is believed to be strategically positioned in the anticipated "Pilot Free Trade Zone" of the Wuhan Port, a crucial trading window among China, the Middle East and Europe. To be fully developed upon completion, within the logistics center, there will be six operating zones: including port operation area, warehouse and distribution area, cold chain logistics area, rail cargo loading area, exhibition area and business related area. The logistics center is also expected to provide a number of shipping berths for cargo ships of various sizes. Wuhan Newport is expected to provide domestic and foreign businesses a direct access to the anticipated Free Trade Zone in Wuhan. The project will include commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, IT supporting services, among others.
>
> Our Logistics Center is an extensive complex located in Wuhan, the capital of Hubei Province of China, a major transportation hub city with access to numerous railways, roads and expressways

passing through the city and connecting to major cities in China, as well as other international centers of commerce and business.

The Logistics Center is expected to occupy approximately 1,918,000 square meters, for which the construction and development are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third year.

\* \* \*

Wuhan Newport has signed a twenty-year lease agreement, maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015 to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.

\* \* \*

As of September 30, 2017, the sole and wholly owned developing project of the Company is called Wuhan Centre China Grand Steel Market (Phase 1) Commercial Building in the south of Hans Road, Wuhan Yangluo Economic Development Zone with approximately 222,496.6 square meters of total construction area.

109. The foregoing statements were materially false and misleading. First, Defendants knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center. Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented 1,200,000 square meters of land to develop the Port Logistics Center. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district.

110. The 3Q 2017 10-Q also discussed legal proceedings that the Company faced, stating that "[t]he Company is not currently a party to any legal proceeding, investigation or

claim which, in the opinion of the management, is likely to have a material adverse effect on the business, financial condition or results of operations."

111. The foregoing statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport was involved in litigation that materially adversely affected its financial condition and operations. By July 2017, Wuhan Newport had filed a bankruptcy petition. By November 2017, it had so many claims and default judgments pending against it that it has been declared insolvent in China. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. By the time that Defendants filed the 3Q 2017 10-Q, there were numerous court judgments ordering Yangtze to buy back commercial apartments that it failed to deliver, as well as an enforcement proceeding.

112. The 3Q 2017 10-Q also discussed the risk that liquidation proceeds posed to the Company, stating:

> **OUR BUSINESS MAY BE MATERIALLY AND ADVERSELY AFFECTED IF ANY OF OUR PRC SUBSIDIARIES DECLARES BANKRUPTCY OR BECOMES SUBJECT TO A DISSOLUTION OR LIQUIDATION PROCEEDING.**
>
> The Enterprise Bankruptcy Law of the PRC, or the Bankruptcy Law, came into effect on June 1, 2007. The Bankruptcy Law provides that an enterprise will be liquidated if the enterprise fails to settle its debts as and when they fall due and if the enterprise's assets are, or are demonstrably, insufficient to clear such debts.
>
> Our PRC subsidiaries hold certain assets that are important to our business operations. If our PRC subsidiaries undergo a voluntary or involuntary liquidation proceeding, unrelated third-party creditors may claim rights to some or all of these assets, thereby hindering our ability to operate our business, which could materially and adversely affect our business, financial condition and results of operations.

113. The foregoing statement was statement was materially false and misleading.

Defendants knew or recklessly disregarded that Wuhan Newport *had actually filed a bankruptcy petition.* On July 13, 2017, an appellate court in China affirmed a lower court decision holding that the lower court had jurisdiction over Wuhan Newport's civil litigation cases once the court accepted its bankruptcy petition. This decision was not available in English.

114.    On March 9, 2018, Yangtze filed its annual report on Form 10-K with the SEC which provided its financial results and position for the fiscal year ended December 31, 2017 ("2017 10-K"). The 2017 10-K was signed by Defendants Liu, Chan, Coleman, and Leibowitz. The 2017 10-K contained signed SOX certifications by Defendants Liu and Chan attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

115.    The 2017 10-K was materially false and misleading because it falsely reported the Company's assets. According to the 2017 10-K, Yangtze had $406,697,070 in assets as of December 31, 2017, most of it in real estate properties and land lots under development that the Company reported to be valued at $364,774,643.

116.    Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $364,774,643. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan Newport has had no assets in China since the second half of 2017 at the latest, and that any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

117.    The 2017 10-K also discussed the Company's purported developments, stating in

relevant part:

Situated in the middle reaches of the Yangtze River, Wuhan Newport is a large infrastructure development project implemented under China's latest "One Belt One Road" initiative and is believed to be strategically positioned in the anticipated "Pilot Free Trade Zone" of the Wuhan Port, a crucial trading window among China, the Middle East and Europe. To be fully developed upon completion, within the logistics center, there will be six operating zones: including port operation area, warehouse and distribution area, cold chain logistics area, rail cargo loading area, exhibition area and business related area. The logistics center is also expected to provide a number of shipping berths for cargo ships of various sizes. Wuhan Newport is expected to provide domestic and foreign businesses a direct access to the anticipated Free Trade Zone in Wuhan. The project will include commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, IT supporting services, among others.

We anticipate that income generated from the use of the warehouses, cargo loading and unloading, railway and highway transportation and logistics services and other logistics supporting services will comprise the main source of our income. It is also expected that income from real estate sales and leasing will be a relatively minor portion of our expected income since we are planning to sell or lease only a small portion of our real estate properties such as office spaces. We will begin construction on the Logistics Center once we are able to raise funds for it.

In the meantime, we have been developing a commercial building project called the Wuhan Centre China Grand Steel Market (Phase 1) Commercial Building ("Phase 1 Project") located in the south of Hans Road, Wuhan Yangluo Economic Development Zone which covers an approximate construction area of 222,496.6 square meters. We have been financing the Phase 1 Project with bank loans and shareholder advances. The Phase 1 Project comprises 7 buildings, four of which covering 35,350,4 square meters have been completed and three of which covering an approximate area of 57,450.4 square meters are still under construction as of December 31, 2017. We have sold approximately 22,780 square meters of commercial building space.

\*       \*       \*

The Logistics Center is expected to occupy approximately

> 1,918,000 square meters, for which the construction and development are expected to be completed in three phases in three years and reach its target maximum annual profit by the end of 2022 assuming the entire funding required for construction of the Logistics Center of $1.03 billion is in place by 2021 and the Logistics Center is in operation per our business plan.
>
> *     *     *
>
> Wuhan Newport has signed a twenty-year lease agreement, maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015 to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.

The Company also specifically reported that as of December 31, 2015, it had leased 1,214,654.52 square meters of land in Chunfeng Village.

118. The foregoing statements were materially false and misleading. First, Defendants knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center. Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented land to develop the Port Logistics Center in Chungfeng Village. Chunfeng Village is a small, traditional Chinese rural village with a total area of only 610,000 square meters – half the area that Defendants claimed the Company had leased. Plaintiffs' investigator found no sign that Wufan Newport has leased land either in Chunfeng Village or the surrounding villages, Junmin Village and Jiangdi Village. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district.

119. The 2017 10-K also discussed legal proceedings that the Company faced, stating that "[t]he Company is not currently a party to any legal proceeding, investigation or claim

which, in the opinion of the management, is likely to have a material adverse effect on the business, financial condition or results of operations."

120.   The foregoing statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport was involved in litigation that materially adversely affected its financial condition and operations. By July 2017, Wuhan Newport had filed a bankruptcy petition. By November 2017, it had so many claims and default judgments pending against it that it has been declared insolvent in China. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. By the time that Defendants filed the 2017 10-K, there were numerous court judgments ordering Yangtze to buy back commercial apartments that it failed to deliver. In 2017, courts closed multiple enforcement actions against Yangtze on the grounds that it had no assets to collect.

121.   The 2017 10-K also discussed the risk that liquidation proceeds posed to the Company, stating:

**OUR BUSINESS MAY BE MATERIALLY AND ADVERSELY AFFECTED IF ANY OF OUR PRC SUBSIDIARIES DECLARES BANKRUPTCY OR BECOMES SUBJECT TO A DISSOLUTION OR LIQUIDATION PROCEEDING.**

The Enterprise Bankruptcy Law of the PRC, or the Bankruptcy Law, came into effect on June 1, 2007. The Bankruptcy Law provides that an enterprise will be liquidated if the enterprise fails to settle its debts as and when they fall due and if the enterprise's assets are, or are demonstrably, insufficient to clear such debts.

Our PRC subsidiaries hold certain assets that are important to our business operations. If our PRC subsidiaries undergo a voluntary or involuntary liquidation proceeding, unrelated third-party creditors may claim rights to some or all of these assets, thereby hindering our ability to operate our business, which could materially and adversely affect our business, financial condition and results of operations.

40

122.    The foregoing statement was statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport **had actually filed a bankruptcy petition.** On July 13, 2017, an appellate court in China affirmed a lower court decision holding that the lower court had jurisdiction over Wuhan Newport's civil litigation cases once the court accepted its bankruptcy petition. This decision was not available in Enlglish.

123.    On April 30, 2018, Yangtze filed its quarterly report on Form 10-Q with the SEC for the quarter ended March 31, 2018 ("1Q 2018 10-Q"). The 1Q 2018 10-Q was signed by Defendants Liu and Chan. The 1Q 2018 10-Q contained signed SOX certifications by Defendants Liu and Chan attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

124.    The 1Q 2018 10-Q was materially false and misleading because it falsely reported the Company's assets. According to the 1Q 2018 10-Q, Yangtze had $422,448,212 in assets as of September 30, 2017, most of it in real estate properties and land lots under development that the Company reported to be valued at $378,228,271.

125.    Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $378,228,271. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan Newport has had no assets in China since the second half of 2017 at the latest, and that any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

126.  The 1Q 2018 10-Q discussed the Company's purported developments, stating in relevant part:

> Situated in the middle reaches of the Yangtze River, Wuhan Newport is a large infrastructure development project implemented under China's latest "One Belt One Road" initiative and is believed to be strategically positioned in the anticipated "Pilot Free Trade Zone" of the Wuhan Port, a crucial trading window among China, the Middle East and Europe. To be fully developed upon completion, within the logistics center, there will be six operating zones: including port operation area, warehouse and distribution area, cold chain logistics area, rail cargo loading area, exhibition area and business related area. The logistics center is also expected to provide a number of shipping berths for cargo ships of various sizes. Wuhan Newport is expected to provide domestic and foreign businesses a direct access to the anticipated Free Trade Zone in Wuhan. The project will include commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, IT supporting services, among others.
>
> The Logistics Center is expected to occupy approximately 1,918,000 square meters, for which the construction and development are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third years.
>
> *       *       *
>
> Wuhan Newport has signed a twenty-year lease agreement, maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015 to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.
>
> *       *       *
>
> As of March 31, 2018, the sole and wholly owned developing project of the Company is called Wuhan Centre China Grand Steel Market (Phase 1) Commercial Building in the south of Hans Road, Wuhan Yangluo Economic Development Zone with approximately 222,496.6 square meters of total construction area.

127.  The foregoing statements were materially false and misleading. First, Defendants

42

knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center. Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented 1,200,000 square meters of land to develop the Port Logistics Center. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district.

128.     The 1Q 2018 10-Q also discussed legal proceedings that the Company faced, stating that "[t]he Company is not currently a party to any legal proceeding, investigation or claim which, in the opinion of the management, is likely to have a material adverse effect on the business, financial condition or results of operations."

129.     The foregoing statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport was involved in litigation that materially adversely affected its financial condition and operations. By July 2017, Wuhan Newport had filed a bankruptcy petition. By November 2017, it had so many claims and default judgments pending against it that it has been declared insolvent in China. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. For example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. By the time that Defendants filed the 1Q 2018 10-Q, there were numerous court judgments ordering Yangtze to buy back commercial apartments that it failed to deliver, and courts had closed multiple enforcement actions against Yangtze on the grounds that

it had no assets to collect.

130.    The 1Q 2018 10-Q also discussed the risk that liquidation proceeds posed to the

Company, stating:

> **OUR BUSINESS MAY BE MATERIALLY AND
> ADVERSELY AFFECTED IF ANY OF OUR PRC
> SUBSIDIARIES DECLARES BANKRUPTCY OR
> BECOMES SUBJECT TO A DISSOLUTION OR
> LIQUIDATION PROCEEDING.**
>
> The Enterprise Bankruptcy Law of the PRC, or the Bankruptcy
> Law, came into effect on June 1, 2007. The Bankruptcy Law
> provides that an enterprise will be liquidated if the enterprise fails
> to settle its debts as and when they fall due and if the enterprise's
> assets are, or are demonstrably, insufficient to clear such debts.
>
> Our PRC subsidiaries hold certain assets that are important to our
> business operations. If our PRC subsidiaries undergo a voluntary
> or involuntary liquidation proceeding, unrelated third-party
> creditors may claim rights to some or all of these assets, thereby
> hindering our ability to operate our business, which could
> materially and adversely affect our business, financial condition
> and results of operations.

131.    The foregoing statement was statement was materially false and misleading.

Defendants knew or recklessly disregarded that Wuhan Newport *had actually filed a bankruptcy*

*petition.* On July 13, 2017, an appellate court in China affirmed a lower court decision holding

that the lower court had jurisdiction over Wuhan Newport's civil litigation cases once the court

accepted its bankruptcy petition. This decision was not available in English.

132.     On August 14, 2018, Yangtze filed its quarterly report on Form 10-Q with the

SEC for the quarter ended June 30, 2018 ("2Q 2018 10-Q"). The 2Q 2018 10-Q was signed by

Defendants Liu and Chan. The 2Q 2018 10-Q contained signed SOX certifications by

Defendants Liu and Chan attesting the accuracy of financial reporting, the disclosure of any

material changes to the Company's internal control over financial reporting and the disclosure of

all fraud.

133.    The 2Q 2018 10-Q was materially false and misleading because it falsely reported the Company's assets. According to the 2Q 2018 10-Q, Yangtze had $400,393,661 in assets as of June 30, 2018, most of it in real estate properties and land lots under development that the Company reported to be valued at $358,671,434.

134.    Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $358,671,434. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan Newport has had no assets in China since the second half of 2017 at the latest, and that any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

135.    The 2Q 2018 10-Q discussed the Company's purported developments, stating in relevant part:

> Situated in the middle reaches of the Yangtze River, Wuhan Newport is a large infrastructure development project implemented under China's latest "One Belt One Road" initiative and is believed to be strategically positioned in the anticipated "Pilot Free Trade Zone" of the Wuhan Port, a crucial trading window among China, the Middle East and Europe. To be fully developed upon completion, within the logistics center, there will be six operating zones: including port operation area, warehouse and distribution area, cold chain logistics area, rail cargo loading area, exhibition area and business related area. The logistics center is also expected to provide a number of shipping berths for cargo ships of various sizes. Wuhan Newport is expected to provide domestic and foreign businesses a direct access to the anticipated Free Trade Zone in Wuhan. The project will include commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, IT supporting services, among others.

> The Logistics Center is expected to occupy approximately 1,918,000 square meters, for which the construction and development are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third years.

*     *     *

> Wuhan Newport has signed a twenty-year lease agreement, maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015 to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.

*     *     *

> As of June 30, 2018, the sole and wholly owned developing project of the Company is called Wuhan Centre China Grand Steel Market (Phase 1) Commercial Building in the south of Hans Road, Wuhan Yangluo Economic Development Zone with approximately 222,496.6 square meters of total construction area.

136.    The foregoing statements were materially false and misleading. First, Defendants knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center. Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented 1,200,000 square meters of land to develop the Port Logistics Center. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district.

137.    The 2Q 2018 10-Q also discussed legal proceedings that the Company faced, stating that "[t]he Company is not currently a party to any legal proceeding, investigation or claim which, in the opinion of the management, is likely to have a material adverse effect on the

46

business, financial condition or results of operations."

138.     The foregoing statement was statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport has so many claims and default judgments pending against it that it has been declared insolvent in China. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. For example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. By the time that Defendants filed the 1Q 2018 10-Q, there were numerous court judgments ordering Yangtze to buy back commercial apartments that it failed to deliver. In 2017, courts closed multiple enforcement actions against Yangtze on the grounds that it had no assets to collect.

139.     The 2Q 2018 10-Q also discussed the risk that liquidation proceeds posed to the Company, stating:

> **OUR BUSINESS MAY BE MATERIALLY AND ADVERSELY AFFECTED IF ANY OF OUR PRC SUBSIDIARIES DECLARES BANKRUPTCY OR BECOMES SUBJECT TO A DISSOLUTION OR LIQUIDATION PROCEEDING.**
>
> The Enterprise Bankruptcy Law of the PRC, or the Bankruptcy Law, came into effect on June 1, 2007. The Bankruptcy Law provides that an enterprise will be liquidated if the enterprise fails to settle its debts as and when they fall due and if the enterprise's assets are, or are demonstrably, insufficient to clear such debts.
>
> Our PRC subsidiaries hold certain assets that are important to our business operations. If our PRC subsidiaries undergo a voluntary or involuntary liquidation proceeding, unrelated third-party creditors may claim rights to some or all of these assets, thereby hindering our ability to operate our business, which could materially and adversely affect our business, financial condition and results of operations.

140.     The foregoing statement was statement was materially false and misleading.

Defendants knew or recklessly disregarded that Wuhan Newport **had actually filed a bankruptcy petition.** On July 13, 2017, an appellate court in China affirmed a lower court decision holding that the lower court had jurisdiction over Wuhan Newport's civil litigation cases once the court accepted its bankruptcy petition. This decision was not available in English.

141.    On November 9, 2018, Yangtze filed its quarterly report on Form 10-Q with the SEC for the quarter ended September 30, 2018 ("3Q 2018 10-Q"). The 3Q 2018 10-Q was signed by Defendants Liu and Chan. The 3Q 2018 10-Q contained signed SOX certifications by Defendants Liu and Chan attesting the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

142.    The 3Q 2018 10-Q was materially false and misleading because it falsely reported the Company's assets. According to the 2Q 2018 10-Q, Yangtze had $386,276,641 in assets as of September 30, 2018, most of it in real estate properties and land lots under development that the Company reported to be valued at $345,716,051.

143.    Defendants knew or recklessly disregarded, however, that the Company did not have real estate properties and land lots under development valued at $345,716,051. Plaintiffs' investigation confirmed that Yangtze has no assets in China. Plaintiffs' field investigator found no sign that Wuhan Newport has developed the Port Logistics Center at all, nor that it has ever had any rights to land on which to do so. Plaintiffs' review of Chinese court records shows that Wuhan Newport has had no assets in China since the second half of 2017 at the latest, and that any assets that it may have had were frozen in 2016. In other words, the Company's reported assets had no basis in reality.

144.    The 3Q 2018 10-Q discussed the Company's purported developments, stating in

relevant part:

> Situated in the middle reaches of the Yangtze River, Wuhan Newport is a large infrastructure development project implemented under China's latest "One Belt One Road" initiative and is believed to be strategically positioned in the anticipated "Pilot Free Trade Zone" of the Wuhan Port, a crucial trading window among China, the Middle East and Europe. To be fully developed upon completion, within the logistics center, there will be six operating zones: including port operation area, warehouse and distribution area, cold chain logistics area, rail cargo loading area, exhibition area and business related area. The logistics center is also expected to provide a number of shipping berths for cargo ships of various sizes. Wuhan Newport is expected to provide domestic and foreign businesses a direct access to the anticipated Free Trade Zone in Wuhan. The project will include commercial buildings, professional logistic supply chain centers, direct access to the Yangtze River, Wuhan-Xinjiang-Europe Railway and ground transportation, storage and processing centers, IT supporting services, among others.

> The Logistics Center is expected to occupy approximately 1,918,000 square meters, for which the construction and development are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third years.

> *     *     *

> Wuhan Newport has signed a twenty-year lease agreement, maximum number of years permitted by the applicable PRC laws, and with rights to renew at its sole discretion effective April 27, 2015 to lease approximately 1,200,000 square meters of land for building logistics warehouses in support of the Logistics Center.

> *     *     *

> As of September 30, 2018, the sole and wholly owned developing project of the Company is called Wuhan Centre China Grand Steel Market (Phase 1) Commercial Building in the south of Hans Road, Wuhan Yangluo Economic Development Zone with approximately 222,496.6 square meters of total construction area.

145.   The foregoing statements were materially false and misleading. First, Defendants knew or recklessly disregarded that they were not, in fact, developing the Port Logistics Center.

Second, Defendants knew or recklessly disregarded that Wuhan Newport had not rented 1,200,000 square meters of land to develop the Port Logistics Center. Third, Defendants knew or recklessly disregarded that were not developing the Steel Market. Plaintiffs' investigator learned that the Steel Market was built in 2011 and 2012 by several developers, but experienced difficulties after a year and remains empty. The local government is now seeking new ownership for the property, which will no longer be a steel market but an office building and residential district

146.    The 3Q 2018 10-Q also discussed legal proceedings that the Company faced, stating that "[t]he Company is not currently a party to any legal proceeding, investigation or claim which, in the opinion of the management, is likely to have a material adverse effect on the business, financial condition or results of operations."

147.    The foregoing statement was materially false and misleading. Defendants knew or recklessly disregarded that Wuhan Newport was involved in litigation that materially adversely affected its financial condition and operations. By July 2017, Wuhan Newport had filed a bankruptcy petition. By November 2017, it had so many claims and default judgments pending against it that it has been declared insolvent in China. Chinese court records, which are not available in English, show that, for example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. For example, in 2016, there were three court decisions in China freezing Wuhan Newport's assets pending the resolution of a lawsuit. By the time that Defendants filed the 1Q 2018 10-Q, there were numerous court judgments ordering Yangtze to buy back commercial apartments that it failed to deliver, and courts had closed multiple enforcement actions against Yangtze on the grounds that it had no assets to collect.

148.    The 3Q 2018 10-Q also discussed the risk that liquidation proceeds posed to the

Company, stating:

> **OUR BUSINESS MAY BE MATERIALLY AND ADVERSELY AFFECTED IF OUR PRC SUBSIDIARY DECLARES BANKRUPTCY OR BECOMES SUBJECT TO A DISSOLUTION OR LIQUIDATION PROCEEDING.**
>
> The Enterprise Bankruptcy Law of the PRC, or the Bankruptcy Law, came into effect on June 1, 2007. The Bankruptcy Law provides that an enterprise will be liquidated if the enterprise fails to settle its debts as and when they fall due and if the enterprise's assets are, or are demonstrably, insufficient to clear such debts.
>
> Our PRC subsidiaries hold certain assets that are important to our business operations. If our PRC subsidiaries undergo a voluntary or involuntary liquidation proceeding, unrelated third-party creditors may claim rights to some or all of these assets, thereby hindering our ability to operate our business, which could materially and adversely affect our business, financial condition and results of operations.

149.    The foregoing statement was statement was materially false and misleading.

Defendants knew or recklessly disregarded that Wuhan Newport *had actually filed a bankruptcy*

*petition.* On July 13, 2017, an appellate court in China affirmed a lower court decision holding

that the lower court had jurisdiction over Wuhan Newport's civil litigation cases once the court

accepted its bankruptcy petition. This decision was not available in English.

**The Truth Emerges**

150.    On August 27, 2018, before the market opened, *Barron's* published an article

entitled, "A Troubled Chinese Company Is Seeking a Lifeline From U.S. Investors" which

revealed that Yangtze was involved in substantial legal proceedings in China that it had never

disclosed:

> [T]he company's Wuhan operating subsidiary is showing up on official websites in which Chinese courts list debtors with unpaid legal judgments. Government websites listing "untrustworthy debtors" are a recent phenomenon in China, filling an information vacuum in a developing economy that doesn't yet have Western-

style credit bureaus and rating agencies. The raft of unpaid bills attributed to Yangtze's subsidiary — Wuhan Yangtze River Newport Logistics Co — totals $120 million for more than a dozen cases.

151.    On December 6, 2018, before the market opened, Hindenburg Research published the Hindenburg Report. The Hindenburg Report revealed that Hindenburg had carried out an investigation into Yangtze that showed its main asset, the Port Logistics Center, was essentially a sham, and that nearly 80% of its reported assets were fabricated. The Hindenburg Report described Yangtze as "an artifice designed to enrich the company's Chairman & controlling shareholders."

152.    Defendants had repeatedly told investors that they intended to build the Port Logistics Center on 1.2 million square meters of land leased from Chunfeng Village. Hindenburg Research reported that Wuhan Newport could not have leased 1.2 million square meters of land from Chunfeng Village, which is a small village with a total area of only 610,000 square meters. Plaintiffs' field investigation confirmed that Chunfeng Village is only 610,000 square meters, and there is no sign that Wuhan Newport has leased any land there or in the surrounding villages, Junmin Village and Jiangdi Village.

153.    The Hindenburg Report described the Steel Market as a ghost town, with no sign of activity apart from a gate guard. Plaintiffs' investigator visited the Steel Market, and also saw that the site was empty. Plaintiffs' investigator learned from three confidential witnesses who had previously worked at the Steel Market that the Steel Market was built in 2011 and 2012 by several developers, to be a retail and/or wholesale market to sell steel related products. After one year, however, the Steel Market experienced difficulties, including disputes with local residents who were unwilling to relocate. The development of the site was stuck for years, and it remains empty. As of 2019, the local government is looking for new ownership for the property, which

will no longer be a steel market but an office building and residential district. Wuhan Newport does not own the Steel Market.

154.    The Hindenburg Report also revealed that Yangtze was involved in numerous undisclosed legal proceedings and that Wuhan Newport has been declared insolvent in China, identifying at least 11 judgements filed against Wuhan Newport totaling RMB 766 million (USD $110 million).

155.    Plaintiffs have identified 33 legal proceedings in China against Wuhan Newport. In one, decided on July 13, 2017, an appellate court held that a lower court had jurisdiction over Wuhan Newport's civil litigation cases once the court accepted its bankruptcy petition. Courts have also closed numerous enforcement proceedings against Wuhan Newport because it had no assets to collect. Plaintiffs' search of Chinese records also shows that Wuhan Newport was listed in the List of Dishonest Persons subject to enforcement by Chinese courts as early as May 3, 2017 for not honoring a judgment against it.

156.    The Hindenburg Report also reported that proceeds from capital raises, including 19 convertible notes the Company issued privately in 2018, have gone directly to Defendant Liu.

157.    On this news, shares of Yangtze fell from an $11.62 per share closing price on December 4, 2018, the last trading day before the release of the Hindenburg Report, to an $8.28 closing price on December 7, 2018, falling nearly 29% in two trading days.

158.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiffs and other Class members have suffered significant losses and damages.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

159.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Yangtze securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Yangtze, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

160.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Yangtze securities were actively traded on the OTC and NASDAQ markets. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds, if not thousands of members in the proposed Class.

161.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

162.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

163.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business Yangtze;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Yangtze to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of Yangtze securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

164.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

165.    Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Yangtze shares met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;

- As a public issuer, Yangtze filed periodic public reports with the SEC and NASDAQ; and

- Yangtze regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

166.     Based on the foregoing, the market for Yangtze securities promptly digested current information regarding Yangtze from all publicly available sources and reflected such information in the prices of the shares, and Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

167.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
#### Against All Defendants

168.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

169.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

170.      During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or

deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

171.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Yangtze securities during the Class Period.

172.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Yangtze were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Yangtze, their control over, and/or receipt and/or modification of Yangtze's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Yangtze, participated in the fraudulent scheme alleged herein.

173.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs and the other members of the Class,

or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Yangtze personnel to members of the investing public, including Plaintiffs and the Class.

174.    As a result of the foregoing, the market price of Yangtze securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiffs and the other members of the Class relied on the statements described above and/or the integrity of the market price of Yangtze securities during the Class Period in purchasing Yangtze securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

175.    Had Plaintiffs and the other members of the Class been aware that the market price of Yangtze securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Yangtze securities at the artificially inflated prices that they did, or at all.

176.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

177.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Yangtze securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

178.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

179.    During the Class Period, the Individual Defendants participated in the operation and management of Yangtze, and conducted and participated, directly and indirectly, in the conduct of Yangtze's business affairs. Because of their senior positions, they knew the adverse non-public information about Yangtze's misstatement of revenue and profit and false financial statements.

180.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Yangtze's financial condition and results of operations, and to correct promptly any public statements issued by Yangtze which had become materially false or misleading.

181.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Yangtze disseminated in the marketplace during the Class Period concerning Yangtze's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Yangtze to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Yangtze within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Yangtze securities.

182.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Yangtze.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, demand judgment against Defendants as follows

(a)     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

(b)     Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

(c)     Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

(d)     Awarding such other and further relief as this Court may deem just and proper.

### <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury.

Dated: June 3, 2019                                     Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

/s/Leah Heifetz-Li
Leah Heifetz-Li
Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: lheifetz@rosenlegal.com
          jgoldberg@rosenlegal.com

*Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2019, I electronically filed the foregoing Amended Class Action Complaint for Violations of the Federal Securities Laws with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

**THE ROSEN LAW FIRM, P.A.**

/s/Leah Heifetz-Li
Leah Heifetz-Li