**FILED: NEW YORK COUNTY CLERK 01/28/2019 10:00 AM** INDEX NO. 150879/2019

NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 01/28/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------ X

MAJESTIC SYMBOL LIMITED,          :              <u>SUMMONS</u>
CRESTLAKE HOLDINGS LIMITED,    :
FORTUNATE DRIFT LIMITED, START   :
WELL INTERNATIONAL LIMITED,     :
PROLIFIC LION LIMITED, VALIANT    :   Index No.:
POWER LIMITED, and SOLID WISE     :
LIMITED,                                    :
                                        :
                Plaintiffs,         :
                                        :
         vs.                         :
                                        :
HINDENBURG RESEARCH, NATHAN     :
ANDERSON, CLARITYSPRING           :
SECURITIES, LLC, CLARITYSPRING INC.,   :
and JOHN DOES NOS. 1 through 15, said   :
names being fictitious and unknown,     :
                                        :
               Defendants,     :

------------------------------------------------------------ X

        To the above named Defendants:

        **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney(s) within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

        Venue is pursuant to C.P.L.R. §§ 503(a), 503(c) and 509 because Defendants and their business activities reside in New York County, and the events and/or omissions giving rise to the claims asserted in this action arise in New York County.

Dated: New York, New York
        January 28, 2019

Case 1:19-cv-00024-DLI-LB   Document 15-1   Filed 07/17/19   Page 2 of 34 PageID #: 242

SICHENZIA ROSS FERENCE LLP

By:_____

Michael H. Ference, Esq.
Daniel Scott Furst, Esq.
Thomas McEvoy, Esq.
1185 Avenue of the Americas, 37th Floor
New York, New York 10036
(212) 930-9700

*Attorneys for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------- X

MAJESTIC SYMBOL LIMITED,
CRESTLAKE HOLDINGS LIMITED,
FORTUNATE DRIFT LIMITED, START
WELL INTERNATIONAL LIMITED,
PROLIFIC LION LIMITED, VALIANT
POWER LIMITED, and SOLID WISE
LIMITED,

                  Plaintiffs,

              vs.

HINDENBURG RESEARCH, NATHAN
ANDERSON, CLARITYSPRING
SECURITIES, LLC, CLARITYSPRING INC.,
and JOHN DOES NOS. 1 through 15, said
names being fictitious and unknown,

              Defendants,

------------------------------------------------------------- X

**VERIFIED COMPLAINT**

Index No.:

Plaintiffs Majestic Symbol Limited, Crestlake Holdings Limited, Fortunate Drift Limited, Star Well International Limited, Prolific Lion Limited, Valiant Power Limited and Solid Wise Limited (collectively, "Plaintiffs"), by and through their counsel, Sichenzia Ross Ference LLP, allege for their Complaint against Defendants Hindenburg Research ("Hindenburg"), Nathan Anderson, ClaritySpring Securities, LLC ("ClaritySpring Securities") ClaritySpring Inc. ("ClaritySpring Inc.") and John Does Nos. 1 through 15, said names being fictitious and unknown ("John Does") (Hindenburg, Mr. Anderson, ClaritySpring Securities, ClaritySpring Inc. and John Does are collectively, the "Defendants"), based on the investigation conducted by or at the direction of Plaintiffs' legal counsel, which investigation into the allegations herein is continuing, and many of the relevant facts are known only by Defendants or are exclusively

Case 1:19-cv-00024-DLI-LB Document 15-1 Filed 07/17/19 Page 4 of 34 PageID #: 244

within their custody and control. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations herein after a reasonable opportunity to conduct discovery.

## SUMMARY OF THE ACTION

1. This is an action by shareholders of non-party Yangtze River Port and Logistics Limited ("Yangtze," "YRIV," or "Company"), a limited company, for prima facie tort, civil conspiracy, unjust enrichment, deceptive trade practices and common law fraud, against an individual and related entities and "research firm" d/b/as through which they published, promoted and distributed an erroneous "research report" concerning Yangtze *after* acquiring one or more "short" positions in Yangtze's stock, and for coordinating with other short sellers and co-conspirators to manipulate and depress the market in Yangtze's common stock. Defendants then published the fictitious report through one or more websites and social media accounts, and re-published and directed online "traffic" to the purported report that is replete with false, misleading and defamatory statements and "research" bullets that are presented in a context and as a whole so as to suggest to the investing public that Yangtze's SEC filings are materially false and misleading.

2. Through a "report" titled "*Yangtze River Port & Logistics: Total Zero. On-the-Ground Research Shows Assets Appear to be Largely Fabricated,*" Defendants published false and malicious misrepresentations about Yangtze and its management, including that Yangtze made fraudulent misrepresentations in its public filings with the U.S. Securities and Exchange Commission ("SEC"), laundered or "siphoned" critical capital away from the Company to and for the exclusive benefit of its largest shareholder and "fabricated" – a word premised upon the act(s) of inventing or falsifying something – its underlying financials and assets.

Case 1:19-cv-00024-DLI-LB    Document 15-1    Filed 07/17/19    Page 5 of 34 PageID #: 245

3.      Yangtze, a global infrastructure company that engages in the business of real estate development and port logistics, is listed on the NASDAQ exchange and trades under the symbol "YRIV."

4.      From the outset, Defendants' agenda was  simple: publish knowingly false and disparaging statements about Yangtze – claiming that information contained in quarterly public filings did not "comport with … reality", that the Company's operating subsidiary is a "dishonest judgment debtor", that the Company is a "shell which exists to raise more capital for the personal use of its controlling shareholder" and that the Company's public quarterly filings constituted "10b-5 Securities Exchange Act violations[s] … that could result in a halt of YRIV shares *at any time*" – for the sole purpose of driving down Yangtze's share price.

5.      To Defendants, actual facts do not matter and the adverse effects of their false and malicious attacks on the Company, its management and other shareholders is of no import; Defendants continue to engage in the foregoing conspiracy for their own financial benefit.  In fact, they proudly disclose their dubious, for-profit strategy:

> **We are short YRIV.**
>
> **Hindenburg Research (possibly along with or through our members, partners, affiliates, employees, and/or consultants) along with our clients and/or investors has a short position in all stocks (and/or options of the stock) covered herein, and therefore stands to realize significant gains in the event that the price of any stock covered herein declines.  Following publication of any report or letter, we intend to continue transacting in the securities covered herein ….**

6.      Almost immediately after Hindenburg Research published its unsigned "research report" on December 6, 2018, Yangtze's stock price plummeted drastically while "short interest" trading and the number of shares trading in Yangtze exploded.

Case 1:19-cv-00024-DLI-LB Document 15-1 Filed 07/17/19 Page 6 of 34 PageID #: 246

7. Since publication, Plaintiffs have begun to uncover the breadth of Defendants' conspiracy to manipulate the market about Yangtze. Specifically, it has become apparent that from the inception of Defendants' scheme, Defendants have consistently conspired with one another to utilize multiple anonymous personas to amplify their fictitious analysis and misstatements about Yangtze and its management.

8. ClaritySpring Securities, ClaritySpring Inc. and Mr. Anderson have published short reports regarding Yangtze under the moniker "Hindenburg Research."

9. Historically, these Defendants have conspired with other "short sellers," like GeoInvetsing, LLC, that hide behind the veneer of "research firms" that target companies in which they have first established a short position. Together, they set out to destroy the market capitalization of the target companies with manufactured "analysis," unspecified and anonymous "on-the-ground" diligence and bald suppositions presented to the investing public through a "research and report" that is suggestive of those "short sellers" and research firms possessing actual facts to support their analysis and conclusions that the SEC filings of the target companies are false and misleading.

10. Defendants' "short and distort" scheme also coincided with a dramatic spike in the "short interest" in Yangtze stock. The abnormally high amount of short interest in Yangtze stock has persisted throughout the conspiracy.

11. Defendants have inflicted, and continue to inflict, reputational and business harm on Yangtze and, consequently, its shareholders, including Plaintiffs. As a result of the publication of the "report," Plaintiffs have suffered substantial harm, including (but not limited to) monetary damages. In particular, Plaintiffs have suffered hundreds of millions of dollars of

Case 1:19-cv-00024-DLI-LB   Document 15-1   Filed 07/17/19   Page 7 of 34 PageID #: 247

unrealized losses based on the sudden and dramatic decline in value of their investment in Yangtze stock since Hindenburg's "research report" was published on December 6, 2018.

12. Indeed, the publication has substantially impaired investor confidence in the Company's management in the midst of raising new capital vis-à-vis the sale of the shares of Yangtze common stock in connection with management's May 4, 2017 filing of a Form S-3 shelf registration statement, as amended on September 7, 2018, to raise approximately $300,000,000 of funds through the capital markets. As a result of the dramatic decline in Yangtze's share price immediately following the publication date, the cost to the Company to raise additional funds is irrefutable.

13. As a consequence of Defendants' actions, which intentionally impaired Yangtze's ability to raise critical capital so that "short sellers" could benefit from underperformance of the Company's stock, ongoing and contemplated transactions have stalled or been cancelled, causing further direct harm to Yangtze and consequent damages to its shareholders, including Plaintiffs.

14. As the "report" is published, republished and linked on social media pages, investor websites and "chat rooms", the expected result happens: those actions artificially depress the Company's share price while the "short sellers" patiently wait to cover their short positions. This is the inverse relationship of their collective strategy: as the price declines, the profits of the "short sellers" rise.

15. The ultimate outcome for Hindenburg Research, therefore, is to destroy Yangtze's share price and market capitalization such that the stock will be delisted from NASDAQ. This is not a conclusory argument; the "research report" unambiguously boasts:

> **We are confident that [Yangtze] will ultimately be delisted and that every penny of its market cap will be wiped out.**

Case 1:19-cv-00024-DLI-LB    Document 15-1    Filed 07/17/19    Page 8 of 34 PageID #: 248

16.     Finally, Yangtze has also incurred substantial fees and expenses in responding to, counteracting and remediating the harm Defendants' conspiracy has caused, including the costs of this litigation.  This, of course, all comes with consequent damages to Yangtze's shareholders, including Plaintiffs.

17.     Defendants have inflicted, and continue to inflict, reputational and business harm on Yangtze, with consequent harm to its shareholders, including Plaintiffs.  Defendants' acts were the direct and proximate cause of each of the Plaintiff's tremendous financial loss on their investment in YRIV, due to its stock dropping each day, since its closing price of $11.62 on December 4, 2018.  Since then, the price of the security has been in a virtual free-fall, closing at a 52-week low of $2.47 per share on January 18, 2019 – representing a decline of over seventy-eight percent (78%) in less than two months.

## PARTIES

18.     Plaintiff Majestic Symbol Limited ("Majestic Symbol") is a limited company organized and existing under the laws of the British Virgin Islands ("BVI") and with a principal place of business in the city of Beijing in the People's Republic of China ("PRC").  Upon information and belief, as of December 5, 2018, Majestic holds 16,600,000 shares of common stock in YRIV.

19.     Plaintiff Crestlake Holdings Limited ("Crestlake") is a limited company organized and existing under the laws of the BVI and with a principal place of business in Hong Kong.  Upon information and belief, as of December 5, 2018, Crestlake holds 16,600,000 shares of common stock in YRIV.

20.     Plaintiff Fortunate Drift Limited ("Fortunate Drift") is a limited company organized and existing under the laws of the BVI and with a principal place of business in

Guangdong Province in the PRC. Upon information and belief, as of December 5, 2018, Fortunate Drift holds 15,460,000 shares of common stock in YRIV.

21. Plaintiff Start Well International Limited ("Start Well") is a limited company organized and existing under the laws of the BVI and with a principal place of business in Hong Kong. Upon information and belief, as of December 5, 2018, Start Well holds 2,717,400 shares of common stock in YRIV.

22. Plaintiff Prolific Lion Limited ("Prolific Lion") is a limited company organized and existing under the laws of the BVI and with a principal place of business in Xingtai City in the PRC. Upon information and belief, as of December 5, 2018, Prolific Lion holds 13,775,298 shares of common stock in YRIV.

23. Plaintiff Valiant Power Limited ("Valiant Power") is a limited company organized and existing under the laws of the BVI and with a principal place of business in Xingtai City in the PRC. Upon information and belief, as of December 5, 2018, Valiant Power holds 1,745,950 shares of common stock in YRIV.

24. Plaintiff Solid Wise Limited ("Solid Wise") is a limited company organized and existing under the laws of the BVI and with a principal place of business at 17620 Fitch Avenue, Suite 220, Irvine, California. Upon information and belief, as of December 5, 2018, Solid Wise holds 1,720,985 shares of common stock in YRIV.

25. Defendant ClaritySpring Inc. is a purported "research firm" incorporated in the State of Delaware that has its principal place of business at 545 Fifth Avenue, Suite 813, New York, New York.

26. Defendant ClaritySpring Inc. was co-founded by defendant Nathan Z. Anderson, its Chief Executive Officer who professes to provide investor clients with "news, research and

Case 1:19-cv-00024-DLI-LB     Document 15-1     Filed 07/17/19     Page 10 of 34 PageID #: 250

detailed due-diligence" on hedge funds. Defendant ClaritySpring Inc., however, also publishes "research reports" in the name of "Hindenburg Research" and openly refers investors and anyone in the marketplace to its false and defamatory tweets and reports about Yangtze.

27.     Defendant ClaritySpring Securities LLC is a registered brokerage firm incorporated in the State of Delaware, with its principal place of business at 545 Fifth Avenue, Suite 813, New York, New York. ClaritySpring Securities is a wholly-owned subsidiary of Defendant ClaritySpring Inc. and is also controlled by defendant Anderson.

28.     Defendant Nathan Z. Anderson is an individual residing at 631 West 207th St., Apt. 11, New York, New York. Mr. Anderson serves as Chief Executive Officer for defendant ClaritySpring Inc. and as Chief Executive Officer and Chief Compliance Officer for ClaritySpring Securities. Mr. Anderson, in addition, operates ClaritySpring's and "Hindenburg Research's" Twitter accounts: @ClarityToast and @HindenburgRes.

29.     On information and belief, Mr. Anderson promotes his purported "research reports" under the guise of "Hindenburg Research" and is responsible for coordinating the activities among the Defendants and co-conspirators.

30.     On information and belief, Mr. Anderson, ClaritySpring and ClaritySpring Corp. (together the "ClaritySpring Defendants") have a financial interest in Defendants' short-and distort scheme and worked with its co-conspirators to publish and/or re-publish on multiple online sites and chat rooms, a series of false and defamatory statements about Yangtze.

31.     Defendant John Doe Nos. 1 through 5 are the persons currently unknown who, on information and belief, work with, for, and/or through Hindenburg Research and/or the ClariftySpring Defendants, short Yangtze's stock and/or profit from the concerted attack on Yangtze.

32.     Defendants John Does Nos. 11 through 15 refer to other individuals or entities, whose identities are presently known to Yangtze, who work with or at the direction of Defendants.

33.     ClaritySpring Inc. and ClaritySpring Securities have their principal places of business in the State of New York. Mr. Anderson is a resident of New York, New York.

34.     Non-party Yangtze is an international infrastructure company that engages in the business of real estate development via a port logistic project located in the middle reaches of China's Yangtze River in Wuhan, China. Yangtze is incorporated in the State of Nevada, with its U.S. headquarters in New York, New York. The history, growth and financial stability of Yangtze are detailed in Yangtze's public filings, which are incorporated by reference.

35.     This Court also has jurisdiction over Defendants pursuant to C.P.L.R. § 302(a)(1) because Defendants transacted business in the State of New York, from where the acts and occurrences that underlie this action arise.

36.     In addition, this Court has jurisdiction over Defendants pursuant to C.P.L.R. § 302(a)(2) because Defendants committed trade libel, tortious interference and other misconduct in the State of New York. For instance, ClaritySpring Inc., ClaritySpring Securities, Hindenburg Research and Mr. Anderson published or aided in publishing the false and misleading December 6, 2018 report about Yangtze on its investor website, https://hindenburgresearch.com.

37.     Jurisdiction over each defendant also is proper pursuant to C.P.L.R. § 302(a)(2) because the facts set forth herein establish a *prima facie* case of a conspiracy among Defendants; compel the conclusion that each defendant was a member of the conspiracy; and demonstrate that at least one – and indeed, all – of the Defendant conspirators committed an overt act in the State of New York to further the conspiracy.

Case 1:19-cv-00024-DLI-LB    Document 15-1    Filed 07/17/19    Page 12 of 34 PageID #: 252

38.     Moreover, this Court has jurisdiction over Defendants pursuant to C.P.L.R. § 302(a)(4), because Defendants own, use and/or possess real property in the State of New York.

39.     Venue in New York County is proper pursuant to C.P.L.R. §§ 503(a), 503(c) and 509 because Mr. Anderson, Hindenburg Research and the ClaritySpring Defendants reside in New York County, the publication of the false and defamatory "research report" occurred in New York County, and the business activities of Mr. Anderson, Hindenburg Research and the ClaritySpring Defendants reside in New York County, and Yangtze, therefore, designates New York County as the place for trial.

## FACTUAL ALLEGATIONS

40.     This action arises from a classic "short and distort" scheme.  In such a scheme, short-sellers borrow securities, sell them and then drive the price of their target company's stock down by spreading materially false, misleading, defamatory and disparaging disinformation about the company.  Once the company's stock drops to an artificially low price, the short-sellers repurchase and return the borrowed securities, profiting from the difference.

41.     Typically, in executing a "short and distort" scheme, short-sellers: (i) disseminate materially false and misleading information to the market; (ii) orchestrate negative analyst reports and articles; (iii) solicit and coordinate false and exaggerated negative "reports" from biased, paid-for and/or bogus "analysts" and "research firms"; and (iv) use such manufactured misinformation to attract market and regulatory or to cause a loss of investor confidence in the company and its management. This is precisely what Defendants have done and continue to do to Yangtze, resulting in damages to its shareholders, including Plaintiffs.

Case 1:19-cv-00024-DLI-LB   Document 15-1   Filed 07/17/19   Page 13 of 34 PageID #: 253

42.     The ClaritySpring Defendants, through their alias Hindenburg Research, admit that they had a short position in Yangtze's stock as of the date of the publication of the "research report."

43.     Once a target company is identified, these hostile short-sellers begin spreading disinformation and false innuendo to a vast audience, using e-mail, social media, online posts and other electronic forums. This is precisely what Defendants have done to Yangtze, as they posted negative, false and misleading information about the Company on Yahoo Finance, Twitter (using the "Twitter Handles" @elkwood66, @HindenburgRes, @RodBoydILM, @WillauerProsky), Hacker News and Reddit.

44.     Targeted companies such as Yangtze and their shareholders, including Plaintiffs, suffer harm caused by these schemes, which directly and materially interfere with each company's ability to conduct business, implement strategic plans and secure critical capital for operations and other obligations of the company.

45.     In particular, the market manipulation causes significant financial harm to the targeted company's shareholders who typically then suffer: substantial unrealized losses as the company's share price declines; substantial realized losses as after they sell their shares at artificially depressed prices to minimize their losses following the market's response to the "research" and short interest; or substantial equity dilution because the company is forced to issue substantially greater amounts of its shares to induce opportunistic investors to still provide investment capital to the company on intentionally costlier terms. At the same time, however, the "short sellers" are unjustly enriched as the foregoing events occur. This is precisely what happened to Yangtze and its shareholders, including Plaintiffs, as a direct and proximate consequence of Defendants' acts and omissions.

Case 1:19-cv-00024-DLI-LB Document 15-1 Filed 07/17/19 Page 14 of 34 PageID #: 254

46.     As detailed herein, since early December 2018, Defendants conspired to carry out a "short and distort" scheme against Yangtze. The below explains Defendants' roles in the scheme and provides an overview of Yangtze's business

47.     The ClaritySpring Defendants posed as John Doe Defendants Nos. 1 through 15 and "Hindenburg Research", and worked with numerous others whose identities are presently unknown to Yangtze.

48.     The ClaritySpring Defendants also admit to using the "Hindenburg Research" alias to publish statements about Yangtze.

49.     Plaintiffs and their counsel are diligently attempting to ascertain the identities of the remaining anonymous co-conspirators from online investing platforms and "chat rooms" and social media sites that post and republish anonymously the "research report" and its contents. These investigations are ongoing.

50.     Hindenburg Research ghost-wrote or contributed substantially to the false and defamatory "research report" on Yangtze that complimented their short position(s) and conspired with other defendants to disseminate the report to the broader investment community, including through online platforms such as Yahoo Finance, Twitter (using the "Twitter Handles" @elkwood66, @HindenburgRes, @RodBoydILM, @WillauerProsky), Hacker News and Reddit.

51.     Defendants  have a financial interest in the "short-and-distort" scheme as they concede  on the Hindenburg Research site that published the December 6, 2018 report as follows: "**Disclosure: We are short YRIV.**" (emphasis in original).

52.     Indeed, they do not hide the fact that their "research report" is funded by one or more investors or other clients and that, with them, they may effectuate a broader strategy of "shorting" the Company's stock:

Case 1:19-cv-00024-DLI-LB     Document 15-1     Filed 07/17/19     Page 15 of 34 PageID #: 255

**Hindenburg Research (possibly along with or through our members, partners, affiliates, employees, and/or consultants) along with our clients and/or investors has a short position in all stocks (and/or options of the stock) covered herein, and therefore stands to realize significant gains in the event that the price of any stock covered herein declines. Following publication of any report or letter, we intend to continue transacting in the securities covered herein ….**

53.     Founded in 2012, ClaritySpring Inc. holds itself out as a research and consulting firm that collects and disseminates "news, research and detailed due-diligence" on hedge funds to lend "transparency" to the hedge fund market. ClaritySpring Inc. wholly-owns a brokerage firm, ClaritySpring Securities, which had a net capital of just $58,482 as of December 31, 2017.

54.     Defendant Anderson, head of ClaritySpring Inc. and ClaritySpring Securities and the individual behind ClaritySpring's Twitter account, formerly "@Clarityspring" and now "@ClarityToast," promotes himself as an expert of "hedge fund due-diligence." In truth, however, Mr. Anderson is simply a short-seller who falsely defames companies and their management, such as Yangtze, for his own financial self-interest.

55.     The ClaritySpring Defendants, and specifically Mr. Anderson, admit that they operated as "Hindenburg Research."

56.     The ClaritySpring Defendants primarily used Twitter to broadcast their falsehoods about Yangtze, first on December 6, 2018.

57.     Before or after publishing its report, Hindenburg Research did not: have any substantive discussion with representatives from Yangtze; any conversation with any companies who have completed financings with Yangtze that are disclosed or the subject of any disclosures in the Yangtze's public filings; contact Yangtze's management to discuss any of the purported facts or subjects in the "report" or to otherwise validate the accuracy or completeness of purported facts, analysis or conclusions in the "report."

Case 1:19-cv-00024-DLI-LB   Document 15-1   Filed 07/17/19   Page 16 of 34 PageID #: 256

58.     Before or after publishing its report, Hindenburg Research did not: identify the sources or dates of those engaged or hired by the research firm to conduct its alleged "on-the-ground" surveillance and diligence, or identify the sources, dates or times of contact with the officials or officers in China that are anonymously referred to and cited as the fact sources supporting the purported research and its investors conclusions despite presenting in the context as a whole to investors in such a way as to suggest that Yangtze's SEC filings are false and misleading.

59.     According to the "research report," Defendants purport to have conducted "on-the-ground" research, investigation and surveillance of Yangtze's physical facilities and properties identified in prior public filings, including posting photographs from unspecified dates and times, including photographs focusing on gated front facility entrances, entranceways and alleys, to demonstrate the supposed absence of production and activity as "evidence" of the absence of production and activity, and, by extension, revenue.  The presentation is false and inaccurate, and the claims contained within the "research report" are baseless and without merit.

60.     The Hindenburg "research report," dated December 6, 2018 ("Report") is comprised, among others, of the following, material misstatements and errors of facts:

> **Report Claim**: "We are of the strong opinion that Yangtze River Port & Logistics is a scheme run by its Chairman & controlling shareholder to siphon money away from U.S. public markets.... YRIV has essentially one project called the Wuhan Yangtze River New Port Logistics Center: The constructed part of the project is a cluster of commercial buildings.  The company claims that 4 of the buildings in the complex are completed . . . yet they have failed to produce any revenue from them. . . .  The unconstructed part of the project is a planned 'Logistics Center' that YRIV states it will build on 1.2 million square meters of land leased from a local village.  On YRIV's latest quarterly balance sheet, the rights to the land are reported as having a value of $299 million, comprising over 77% of the company's total assets."

Case 1:19-cv-00024-DLI-LB    Document 15-1    Filed 07/17/19    Page 17 of 34 PageID #: 257

<u>**Actual Facts**</u>:  The essence of the Report's statements concerning how the Company's assets are accounted for and reported, taken in context and as a whole, is that Yangtze's filings are materially false and misleading.  These statements, however, are false and defamatory.  First, since all land in the People's Republic of China ("PRC") is owned by the government, the land itself that is being leased, such as by Yangtze, cannot be accounted for as part of the Company's assets.

Second, Yangtze is a real and operating company and is not a sham or fraud.  The Report refers to an undeveloped portion of a project known as the Wuhan Yangtze River New Port Logistics Center ("Logistics Center"), which is a cluster of six, unused parcels of land, to which YRIV has obtained the land use rights, as referenced in Yangtze's 10-Q for the period ended September 30, 2018 publicly filed with the SEC on November 6, 2018 (attached as Exhibit "1").  In fact, the publicly filed 10-Q discloses the Logistics Center and notes that Wuhan Newport (Yangtze's subsidiary) signed a twenty-year lease agreement effective April 27, 2015, which includes the land use rights to develop the unused parcels of land (*see* Exhibit 1").

Third, as explained by Yangtze in its Press Release dated December 12, 2018 annexed to its 8-K filed with the SEC on December 13, 2018 (attached as Exhibit "2"), the reported value of $299 million reflected in the Company's 10-Q for the period ended September 30, 2018 is not related to the 1.2 million square meters of land that the Report falsely mentions.  Instead, the reported value of $299 million relates to the value of the land use certificates that Yangtze has obtained for the unused portion of the aforementioned six parcels of land (*i.e.*, the Logistics Center), which totals 436,400 square meters of the 515,600 square meters that comprises the Logistics Center altogether.  The Company further reported in the 8-K that, based on a third-party appraiser, it estimates the market value of the six parcels of commercial land totaling 515,600 square meters to have nearly doubled, with an appraised value of close to $600 million (*see* Exhibit "2").  The Report deceptively conflates the concepts of the 1.2 million square of meters land that the Company is leasing with the six commercial plots of 515,600 square meters for which the YRIV has already obtained the land use certificates.  The Report's statements are false, misleading and defamatory.

Finally, Yangtze's figures and accounting are accurately disclosed in its public filings, and Yangtze is a real and operating Company and is not a sham or fraud.  Indeed, under Item 1 of YRIV's latest

10-Q for the quarter ended September 30, 2018, the Company reported as one of its assets "Real estate properties and land lots under development," with a value of $345,716,051 (Exhibit "1"). These referenced "land lots under development" are, indeed, the Logistics Center (*see* Exhibit "1"). Accordingly, it is simply false and defamatory for the Report to characterize Yangtze as a fraudulent company that misrepresents and overinflates its assets.

**Report Claim**: "Money from YRIV's capital raises has been used to pay the chairman/controlling shareholder rather than advance Company's projects. . . . So where does all the new cash go? YRIV has consistently reported large liability balances 'due to related parties' on its financial statements. These in turn seem to accrue large interest rates which simply get added to the 'advances' over time. When capital is raised, cash is then used to pay back the supposed related-party 'advances,' rather than being employed to further the company's projects. In the September 2018 quarter alone, the CEO and controlling shareholder, Liu Xiangyao, was 'repaid' $6.2 million dollars both directly and through an entity he controls called Jasper Lake Holdings ('Jasper'). . . . In the June 2018 quarter, the CEO was 'repaid' $1.3 million, along with another $3 million in the March 2018 quarter. Based on the disclosure, the total amount of those 19 convertible notes [issued by the Company in 2018] amounted to $8.5 million, of which $3.39 million is outstanding while $5.15 million has been redeemed. We can therefore infer that raised cash from these convertible notes went to the Chairman, not to the business operations of YRIV."

**Actual Facts**: The Report's statements are false and defamatory. Yangtze is a real and operating Company and is not a sham or fraud. The figures listed for each reporting quarter are *cumulative* from prior quarters (*i.e.*, the amounts listed in the quarter ended June 30, 2018 include those in the previous quarter). Defendants omit to mention in their "analysis" Item 15.2 of the 10-Q for the period ended September 30, 2018, which reflects that Mr. Liu advanced $7,551,311 to Yangtze and was "repaid" $4,920,318 (Exhibit "1").

Similarly, as reflected in Item 15.2 of the 10-K for the period ended December 31, 2017, filed with the SEC on March 9, 2018, as amended on May 23, 2018, Mr. Liu advanced $2,129,589 to Yangtze and was "repaid" $22,402 (Exhibit "3"). With respect to Jasper, Jasper financed a merger of Yangtze with Kirin Global Enterprises, Inc. for an aggregate of $75,000,000 via an eight percent (8%) convertible note on December 31, 2015, as reflected

in Item 11 of the 10-Q for the period ended September 30, 2018 (Exhibit "1"). For the reporting quarter that ended September 30, 2018, Yangtze owed the full amount of the principal under the note plus $15,346,035 in accrued interest as reflected in Item 15.2 of the 10-Q for the period that ended September 30, 2018 (Exhibit "1"). The foregoing, fully-reported figures confirm net advances from Mr. Liu to Yangtze, yet Hindenburg Research deceptively omitted these facts and arithmetic from its purported analysis and conclusion (Exhibit "1").

The Report's false and defamatory claim that the cash raised from convertible notes goes to Mr. Liu instead of to fund capital projects is further disproven by Yangtze's SEC filings. Indeed, the Report has deliberately and deceptively taken figures out of context to falsely suggest to shareholders and the marketplace which follow Yangtze's stock that $6.2 million out of a total of $8.546 million of proceeds from short-term financing were "siphoned" off to Mr. Liu. To the contrary, Yangtze has made regular payments toward its obligations arising from 19 convertible notes from 2018 since the notes were issued (and continues to do so). As reflected in its filings for the period ended September 30, 2018, Yangtze has issued the convertible notes totaling USD $8,546,202 to fund certain deposit payments that are part of a proposed acquisition of Wuhan Economic Development Port Limited ("Wuhan EDP") (*see* Item 1 ("Proceeds from notes payable") of Exhibit "1"). Moreover, as reflected in the 10-Q filing for the period ended September 30, 2018, under Section 11, $6,805,263 of the 19 convertible notes has already been redeemed (Exhibit "1"). Thus, as reflected in the public filings, only $1,740,939 of the total debt from these convertible notes remains as of September 30, 2018 ($8,546,202 *less* $6,805,263) (*see* Exhibit "1") (and, incidentally, as of the date of the filing of this Complaint, the entirety of the 19 convertible notes has been paid off, which should be reflected in Yangtze's next 10-K public filing with the SEC). Thus, the Report's statement that "raised cash from these convertible notes went to the Chairman, not to the business operations of YRIV", in the context presented and as a whole, is false and defamatory. The Company's transactions, financings and payments are accurately disclosed in Yangtze's public filings.

**Report Claim**: "Based on these observations, we believe that YRIV is largely a shell which exists to raise more capital for the personal use of its controlling shareholder and chairman."

**Actual Facts**: The Report's statements are false and defamatory. Yangtze is a real and operating Company and is not a sham or a

Case 1:19-cv-00024-DLI-LB    Document 15-1    Filed 07/17/19    Page 20 of 34 PageID #: 260

fraud. Rule 405 of the Securities Act and Rule 12-b of the Exchange Act define a "shell" company as one with no or nominal operations, and either no or nominal assets, assets consisting solely of cash and cash equivalents, or assets consisting of any amount of cash and cash equivalents and nominal other assets.

As set forth in detail in the Company's 10-Q filing for the period ended September 30, 2018, Yangtze is actively working to develop the Logistics Center, which will operate on a cluster of six, unused parcels of land for which the Company has obtained the land use rights (*see* Exhibit "1"). The Company's 10-Q provides that the construction and development of the Logistics Center "are expected to be completed in five years while the total anticipated investment have been divided into three phases – 40% of the total in the first year and 30% respectively in the second and third years" (Exhibit "1"). Moreover, under Item 1 of Yangtze's latest 10-Q for the quarter ended September 30, 2018 (Exhibit "1"), the Company reported as one of its assets "Real estate properties and land lots under development," with a value of $345,716,051. The referenced "land lots under development" are the Logistics Center (Exhibit "1"). Indeed, the valuation and figures of Yangtze's assets are accurately disclosed in Yangtze's public filings. Thus, the Report's statement concerning the Company's assets and its "shell" status are false and defamatory.

Finally, the Company has attempted to raise funds for capital projects, as evidenced by its S-3 Registration Statement, filed with the SEC on May 4, 2017, and as amended on September 7, 2018, reflecting its ability to sell securities for a maximum aggregate offering price of up to $300,000,000 (the S-3 and S-3/A are collectively attached as Exhibit "4"), which the Company has been actively trying to raise for various projects. While Defendants' "short and distort" scheme and defamatory conduct has made it much more difficult for Yangtze to do so, resulting in damages to the Company, as discussed below, the point remains: the Company is fully operational and has been actively working to raise capital for various projects. Accordingly, the Reports' statement that the Company is a "shell" is false and defamatory.

61.    Notwithstanding the foregoing unsupportable contentions that Defendants have presented in a context and as a whole to suggest that Yangtze's SEC filings are false and misleading and that the report's contents are statements of actual fact, Defendants also lace their "research" with claims that Yangtze has committed a "fraud on the market" which are violations

of Section 10b-5 Securities Exchange Act – federal securities law violations – and "could result in a halt of [Yangtze] *shares at any time*." (emphasis added.)

62.     The ClaritySpring Defendants and their co-conspirators succeeded in overwhelming the market with their self-constructed misstatements of fact. As a result of the Defendants' false attacks on Yangtze's management, accounting, and/or auditing practices, Yangtze's stock price has been dropping day by day, since its closing price of $11.62 on December 4, 2018.  Since Hindenburg Research published its false and defamatory article on December 6, 2018, the stock has been in a virtual free-fall, closing at a 52-week low of $2.47 per share on January 18, 2019 – representing a decline of over seventy-eight percent (78%) in less than two months.  Thus, between the close of the market on December 6, 2018 and the close on January 18, 2019, Yangtze has lost $1.297 billion of its market capitalization (*i.e.*, $9.99 closing price of the stock on December 6, 2018 *less* $2.47 closing price on January 18, 2019, *multiplied by* 172,532,565 shares outstanding).  These losses harm Yangtze's shareholders, including Plaintiffs.

63.     Specifically, Majestic Symbol has sustained, at a minimum, unrealized losses of $150,064,000 based on its holding of, upon information and belief, 16,600,000 shares of common stock in the Company as of December 4, 2018 ($11.62 closing price of the stock on December 4, 2018 *less* $2.58 closing price on January 24, 2019, *multiplied by* 16,600,000 shares).

64.     Crestlake has sustained, at a minimum, unrealized losses of $150,064,000 based on its holding of, upon information and belief, 16,600,000 shares of common stock in the Company as of December 4, 2018 ($11.62 closing price of the stock on December 4, 2018 *less* $2.58 closing price on January 24, 2019, *multiplied by* 16,600,000 shares).

65.     Fortunate Drift has sustained, at a minimum, unrealized losses of $139,758,400 based on its holding of, upon information and belief, 15,460,000 shares of common stock in the Company as of December 4, 2018 ($11.62 closing price of the stock on December 4 2018 *less* $2.58 closing price on January 24, 2019, *multiplied by* 15,460,000 shares).

66.     Start Well has sustained, at a minimum, unrealized losses of $24,565,296 based on its holding of, upon information and belief, 2,717,400 shares of common stock in the Company as of December 4, 2018 ($11.62 closing price of the stock on December 4, 2018 *less* $2.58 closing price on January 24, 2019, *multiplied by* 2,717,400 shares).

67.     Prolific Lion has sustained, at a minimum, unrealized losses of $124,528,693 based on its holding of, upon information and belief, 13,775,298 shares of common stock in the Company as of December 4, 2018 ($11.62 closing price of the stock on December 4, 2018 *less* $2.58 closing price on January 24, 2019, *multiplied by* 13,775,298 shares).

68.     Valiant Power has sustained, at a minimum, unrealized losses of $15,783,388 based on its holding of, upon information and belief, 1,745,950 shares of common stock in the Company as of December 4, 2018 ($11.62 closing price of the stock on December 4, 2018 *less* $2.58 closing price on January 24, 2019, *multiplied by* 1,745,950 shares).

69.     Solid Wise has sustained, at a minimum, unrealized losses of $15,557,704 based on its holding of, upon information and belief, 1,720,985 shares of common stock in the Company as of December 4, 2018 ($11.62 closing price of the stock on December 4, 2018 *less* $2.58 closing price on January 24, 2019, *multiplied by* 1,720,985 shares).

70.     As is also common and regrettably now predictable in the microcap public sector, companies like Yangtze that are targeted by purported "research analysts" and "research firms" and then victimized by contemporaneous "short" attacks, such events also draw the attention and

Case 1:19-cv-00024-DLI-LB    Document 15-1    Filed 07/17/19    Page 23 of 34 PageID #: 263

concerted energies of various law firms that actively solicit and represent plaintiff-claimants in securities actions, arbitrations and class actions. Indeed, from on or about December 14, 2018 to the present, no less than fifteen (15) law firms, including Rosen Law Firm, Pomerantz Law Firm and Levi & Korsinsky, have all published on their websites and purchased online advertising promoting their "investigations" into the allegations set forth in the "research report" of Hindenburg Research.

71.    On information and belief, these purported "investigations" consist of little more than the content published by the Defendants, which has been republished verbatim by these firms and across their internal bar associations' internal "chat rooms" and posting boards. The purpose of such announcements, internally and to the general public, is, on information and belief, to solicit target company shareholders, such as shareholders of Yangtze common stock, to contact the firms and agree to engage the firms as plaintiffs to pursue litigation and potential settlements.

72.    Importantly, all of these securities law firms have highlighted the purported statements contained in the "report" as presented in its original context and as a whole to be actual facts despite that the report's statements are not at all based on fact. For example, the law firm Kirby McInerney LLP issued a press release, stating:

> Hindenburg Research ("Hindenburg") published a report that described Yangtze as 'a scheme run by its Chairman & controlling shareholder to siphon money away from U.S. public markets.' The Hindenburg report asserted that Yangtze's 'only operating entity has been declared insolvent in China and is involved in multiple undisclosed legal proceedings.' Based on 'government-sourced documents and interviews with local officials,' they 'believe that at least 77% of the company's reported assets are fabricated.'

Based on the "report," the firm now advertises to the market and Yangtze's shareholders that it is investigating "whether Yangtze has violated federal securities laws and/or engaged in other

unlawful business practices." This is *not* speculative harm to Yangtze and its shareholders, including Plaintiffs.

73. The purported "researchers" and the "short sellers" that "ghost-write", fund and/or trade upon their work together with the niche of law firms that sustain themselves on these curated post-publication events act in concert to the detriment of lawful, SEC-reporting companies like Yangtze.

74. Indeed, on January 23, 2019, Yangtze filed a lawsuit alleging, *inter alia*, defamation per se against the Defendants for their defamatory "research report," and less than forty-eight hours of the filing of the Complaint in that action, on in formation and belief, the ClaritySpring Defendants, acting through Hindenburg Research, posted on Twitter their bottom line: "We … reiterate our price target of ZERO." Defendants' malicious intent is irrefutable. Nowhere in their "research report" had Defendants ever provided or recommended any price target estimate or share price evaluation measure. Their objective is "short and distort" based on deceit and misrepresentation in order to destroy Yangtze's share price, harm its shareholders, such as Plaintiffs, and enrich Defendants and their co-conspirators.

75. The negative publicity fomented by Defendants led potential and current business partners to view Yangtze more skeptically than was otherwise warranted, harming the Company's reputation.

76. Moreover, on information and belief, Defendants forced Yangtze to squander time and money defending against the frivolous accusations. Yangtze has incurred substantial fees and expenses in responding to, counteracting and remediating the harm of Defendants' misconduct, including the costs of this litigation.

Case 1:19-cv-00024-DLI-LB    Document 15-1    Filed 07/17/19    Page 25 of 34 PageID #: 265

77.     Furthermore, Defendants' constant attacks on Yangtze are distracting to Yangtze's senior management, diverting the executive officers' attention aware from dealing with business issues and forcing them instead to spend time, money, and efforts on investigating and rebutting the false allegations manufactured by Defendants.

78.     Additionally, as a direct and proximate cause of Defendants' acts and omissions, it is more difficult and costly to Yangtze to raise operating capital on terms contemplated by Yangtze when it filed its Form S-3 Registration statement with the SEC on May 4, 2017 and as amended on September 7, 2018. A true and correct copy of the Form S-3 and Form S-3/A is attached hereto collectively as Exhibit "4" ("S-3").

79.     Pursuant to the terms of the S-3, Yangtze may sell securities for a maximum aggregate offering price of up to $300,000,000. Yangtze was actively negotiating terms for its financing when Hindenburg Research published its false and defamatory report and smashed the share price of Yangtze stock. As investor confidence fell with the plummeting share price, the cost to Yangtze of raising capital from underwriters has dramatically increased.

80.     After the publication of the "report" and dramatic drop in share price, underwriters are demanding that Yangtze issue not only significantly larger amounts of its stock but also warrants - additional convertible securities that were not requirements demanded by underwriters of Yangtze.

81.     This is not only demonstrably more expensive to Yangtze, but, for all of its shareholders, larger stock issuances plus convertible securities to raise the *same amount* of capital will have a dilutive effect on all shareholders of the Company, including Plaintiffs.

Case 1:19-cv-00024-DLI-LB    Document 15-1    Filed 07/17/19    Page 26 of 34 PageID #: 266

82.     Finally, insofar as the Report falsely stated that Yangtze's assets are "fabricated," and otherwise falsely attacked its management, accounting and/or auditing practices, Yangtze's ability to obtain loans from lenders has been impaired.

83.     As a result of Defendants' acts and omissions, Plaintiffs have been damaged in an amount to be determined at trial, but in any event, no less than $500,000.

### AS AND FOR A FIRST CAUSE OF ACTION
### Prima Facie Tort
### (As Against All Defendants)

84.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

85.     As set forth herein, Defendants knowingly and intentionally published false and injurious statements about Yangtze and its businesses. Those publications include false statements and innuendo that Yangtze did not adhere to proper audit and/or accounting practices, did not properly disclose material information in public filings, engaged in acts that allegedly constituted federal securities violations, "siphoned" crucial corporate assets away from the firm for the exclusive and personal use of its majority controlling shareholder and chairman and is, for reasons reported in its "research report", a worthless Company.

86.     Defendants published these false and misleading statements attacking Yangtze's audits, accounting, statutory disclosures, alleged related party transactions and financial condition in analyst reports, articles, web postings, e-mails and direct communications.

87.     Defendants' false, misleading and defamatory statements set forth herein concerning Yangtze were made and published with the intention of inflicting economic harm on Yangtze and its shareholders, including Plaintiffs, insofar as Defendants intended to manipulate

Case 1:19-cv-00024-DLI-LB Document 15-1 Filed 07/17/19 Page 27 of 34 PageID #: 267

the price and value of the Company's securities to benefit financially Defendants who intended to short sell Yangtze's stock.

88. Defendants published their falsehoods and innuendo to third-parties and understood and intended that these false statements would have the effect of injuring Yangtze's reputation, preventing others from doing business with Yangtze, interfering with Yangtze's existing business relationships, and decreasing the price of Yangtze's stock.

89. As set forth herein, these injurious attacks on Yangtze's business, reputation and integrity include, but are not limited to, the following false and misleading allegations set forth in Paragraphs 69 through 73, above.

90. The false and misleading statements, as set forth in Paragraphs 69 through 73, above, were made recklessly and intentionally by Defendants, without excuse or justification.

91. As a proximate result of Defendants' publication of false, misleading and defamatory statements cited herein made with specific intent to harm Yangtze and its shareholders, including Plaintiffs, Plaintiffs have suffered special damages by way of losing value in their holdings of Yangtze stock, in an amount to be determined at trial, but in any event, no less than $500,000.

### AS AND FOR A SECOND CAUSE OF ACTION
### Civil Conspiracy
### (As Against All Defendants)

92. Yangtze restates each and every allegation of paragraphs 1 through 91 as if fully set forth herein.

93. As set forth herein, each of the Defendants, together with others, conspired with respect to the First Count, above, by agreeing to commit those unlawful acts. Each of the Defendants shared the same conspiratorial objective, which was to create and disseminate false

Case 1:19-cv-00024-DLI-LB Document 15-1 Filed 07/17/19 Page 28 of 34 PageID #: 268

and misleading statements and reports concerning Yangtze and to engage in market manipulation of its securities, with the intent of harming Yangtze's businesses and shareholders, decreasing the price of Yangtze's stock, and profiting from that harm. Each of the Defendants understood the objectives of the scheme, accepted them, and was an active and knowing participant in the scheme.

94.    Defendants' conspiratorial scheme was carried out by the commission of the wrongful and overt acts set forth above, including, but not limited to: Defendants' publication of false and misleading information about Yangtze, including the "research report" dated December 6, 2018, published through their alias, Hindenburg Research.

95.    Using their alias "Hindenburg research," the ClaritySpring Defendants promoted and published and re-published, through a series of false and defamatory tweets, Defendants' misrepresentations.

96.    The ClaritySpring Defendants have continued their role in the conspiracy to this day and have focused their involvement to coincide with the "Hindenburg research."

97.    At all relevant times, Defendants' conduct was willful and intentional, and done with legal malice and knowledge that it was wrongful.

98.    As a direct, proximate result of the operation and execution of the conspiracy, Yangtze and its shareholders, including Plaintiffs, have been injured and suffered damages in an amount to be proven at trial, but in any event, no less than $500,000.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(As Against All Defendants)**

99.    Plaintiffs restate each and every allegation set forth in paragraphs 1 through 98 as if fully set forth herein.

Case 1:19-cv-00024-DLI-LB Document 15-1 Filed 07/17/19 Page 29 of 34 PageID #: 269

100.    As set forth herein, Defendants knowingly and intentionally published false and injurious statements about Yangtze and its businesses. Those publications include false statements and innuendo that Yangtze did not adhere to proper audit and/or accounting practices, did not properly disclose material information in public filings, engaged in acts that allegedly constituted federal securities violations, "siphoned" crucial corporate assets away from the firm for the exclusive and personal use of its majority controlling shareholder and chairman and is, for reasons reported in its "research report", a worthless Company.

101.    Defendants published these false and misleading statements attacking Yangtze's audits, accounting, statutory disclosures, alleged related party transactions and financial condition in analyst reports, articles, web postings, e-mails and direct communications.

102.    Defendants' false, misleading and defamatory statements set forth herein concerning Yangtze were made and published with the intention of inflicting economic harm on Yangtze and its shareholders, including Plaintiffs, insofar as Defendants intended to manipulate the price and value of the Company's securities to benefit financially Defendants who intended to short sell Yangtze's stock.

103.    Defendants published their falsehoods and innuendo to third-parties and understood and intended that these false statements would have the effect of injuring Yangtze's reputation, preventing others from doing business with Yangtze, interfering with Yangtze's existing business relationships, and the decreasing the price of Yangtze's stock.

104.    As set forth herein, these injurious attacks on Yangtze's business, reputation and integrity include, but are not limited to, the following false and misleading allegations set forth in Paragraphs 69 through 73, above.

Case 1:19-cv-00024-DLI-LB    Document 15-1    Filed 07/17/19    Page 30 of 34 PageID
#: 270

105.     The false and misleading statements, as set forth in Paragraphs 69 through 73, above, were made recklessly and intentionally by Defendants, without excuse or justification.

106.     As a direct and proximate result of Defendants' publication of false, misleading and defamatory statements cited herein made with specific intent to harm Yangtze and its shareholders, including Plaintiffs, Plaintiffs have suffered damages by way of losing value in their holdings of Yangtze stock, in an amount to be determined at trial, but in any event, no less than $500,000.

107.     Because Defendants made false, misleading and defamatory statements regarding Yangtze with the intent of publishing those statements for their own benefit insofar as they intended to short sell shares of stock of Yangtze, Defendants were enriched at the expense of Plaintiffs and the Company.

108.     It would be against principles of equity and good conscience to permit Defendants to retain what they gained by investing in, and/or short selling, shares of stock in Yangtze.

### AS AND FOR A FOURTH CAUSE OF ACTION
### Deceptive Trade Practices under Gen. Bus. Law § 349
### (As Against All Defendants)

109.     Plaintiffs restate each and every allegation set forth in paragraphs 1 through 108 as if fully set forth herein.

110.     New York General Business Law Section 349 ("GBL § 349") prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State.

111.     At all times referenced herein, Plaintiffs were "consumers" within the meaning of the New York General Business Law.

112.    Defendants engaged in deceptive acts and practices in connection with their publication of false, misleading and defamatory statements cited herein and as set forth in Paragraphs 69 through 73, above.

113.    Defendants published false, misleading and defamatory statements cited herein and as set forth in Paragraphs 69 through 73, above, with the intent to defraud and mislead consumers.

114.    Defendants' conduct cited herein and as set forth in Paragraphs 69 through 73, above, was consumer-oriented because Defendants' publication of false, misleading and defamatory statements as cited herein was directed at consumers-at-large, not at specific individuals or parties.

115.    Defendants' conduct cited herein and as set forth in Paragraphs 69 through 73, above, was not unique to Defendants and Plaintiffs insofar as Defendants' publication of false, misleading and defamatory statements as cited herein was directed at consumers-at-large.

116.    Based on the foregoing, Defendants have engaged in deceptive conduct in violation of GBL § 349.

117.    As a result of Defendants' violation of GBL § 349, Plaintiffs have been damaged in an amount to be proven at trial, but in any event, no less than $500,000.

118.    Defendants' conduct further makes them liable to Plaintiffs for reasonable attorneys' fees and costs pursuant to GBL § 349.

### AS AND FOR A FIFTH CAUSE OF ACTION
### Common Law Fraud
### (As Against All Defendants)

119.    Yangtze restates each and every allegation of paragraphs 1 through 118 as if fully set forth herein.

Case 1:19-cv-00024-DLI-LB   Document 15-1   Filed 07/17/19   Page 32 of 34 PageID #: 272

120.    Defendants' conduct set forth above, including, but not limited to, publishing false and misleading statements and, in conjunction with, engaging in short positions, constitutes, evidences or results from misrepresentations of fact and fraud. Moreover, on information and belief, Defendants also selectively shared their "research report" with persons or entities working with, for, or through them. Defendants did not reveal this selective disclosure.

121.    The foregoing misrepresentations and misstatement were material and known to Defendants to be false.

122.    Defendants made these misrepresentations and misstatements for the purpose of and intending that Yangtze's shareholders and market participants as a whole would rely on same and sell their shares as a result.

123.    Plaintiffs did reasonably rely on these misrepresentations and misstatements and were ignorant of the truth.

124.    Defendants' conduct was willful and wanton and intended to injure Yangtze and its shareholders, including Plaintiffs.

125.    As a direct and proximate result of Defendants' fraudulent conduct as alleged above, Plaintiffs have suffered damages in an amount be determined at trial but, in any event, not less than $500,000.

WHEREFORE, Plaintiffs demand judgment: a) Awarding Plaintiffs compensatory damages in amounts to be determined at trial, together with interest, attorneys' fees, costs and disbursements; b) Awarding Plaintiffs injunctive relief preventing Defendants from engaging in continued wrongful activity, as set forth herein, in the form that the Court may determine is just and proper; c) Disgorging profits Defendants gained as a result of their wrongful activity; d) Pre-

Case 1:19-cv-00024-DLI-LB    Document 15-1    Filed 07/17/19    Page 33 of 34 PageID #: 273

judgment and post-judgment interest; and e) Such other and further relief as this Court shall deem just and appropriate.

JURY DEMAND: Plaintiffs hereby demand trial by jury on all issues properly triable thereby.

Dated: New York, New York
January 28, 2019

SICHENZIA ROSS FERENCE LLP

By:_____

Michael H. Ference, Esq.
Daniel Scott Furst, Esq.
Thomas McEvoy, Esq.
1185 Avenue of the Americas, 37th Floor
New York, New York 10036
(212) 930-9700

*Attorneys for Plaintiffs*

Case 1:19-cv-00024-DLI-LB   Document 15-1   Filed 07/17/19   Page 34 of 34 PageID #: 274

## **VERIFICATION**

Dominic Sin, under penalties of perjury, deposes and says:

I am the sole owner and officer of Start Well International Limited, a limited company, which is one of the Plaintiffs in this action. I have read the annexed Verified Complaint, know the contents thereof, and state that same are true to my knowledge, except as to those matters therein stated to be alleged on information and belief, and, as to those matters, I believe them to be true.

Dated: January 25, 2019

I affirm this 25th day of January, 2019, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that I am physically located outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

_____
Dominic Sin